294 So.2d 265 (1974)
Howard W. KIDD et al.
v.
BOARD OF TRUSTEES OF the TEACHERS' RETIREMENT SYSTEM OF LOUISIANA et al.
No. 9792.
Court of Appeal of Louisiana, First Circuit.
April 22, 1974.
Rehearing Denied May 30, 1974.
*266 William J. Dodd, John L. Avant, Floyd J. Falcon, Jr. and Kenneth L. Riche, Baton Rouge, for appellants.
William T. Reeves, Jr., and Wm. C. Roberts, Baton Rouge, for appellees.
*267 Before LANDRY, ELLIS and PICKETT, JJ.
LANDRY, Judge.
Plaintiffs, Howard W. Kidd, John E. Fitzpatrick and Dr. Donald L. Hoover (Appellants), appeal dismissal of their class action for mandamus compelling the Board of Trustees of the Teachers' Retirement System of Louisiana (Board) to grant Appellants and all other members of the Teachers' Retirement System (System) credit under the Teachers' Retirement Act (Act) for pre-membership, part-time service rendered while enrolled as students in educational institutions, or performed for certain state agencies. The trial court held that the Act grants retirement credit only for full time pre-membership employment, remuneration for which was paid in salaries. We affirm.
It is conceded by all concerned that the Act authorizes allowance of retirement credit for pre-membership "teaching" services as defined therein. The controversy concerns the question of whether the Act limits such credit to full time employment.
Admittedly Appellants are all teachers within the statutory definition of the term hereinafter set forth. Mr. Kidd, presently employed as high school coordinator for the East Baton Rouge Parish School Board, has been employed by that agency for 37 years. In August, 1972, he applied for pre-membership credit for service as a dormitory monitor while enrolled as a student at Louisiana Tech. As monitor, Mr. Kidd's duties consisted of maintaining quiet and order in the boys' dormitory, making morning and night time bed checks and serving emergency night time duty. For such services, he received tuition, room, board, laundry privileges and medical care as compensation in lieu of cash salary. In this manner, he financed his college education. The Board rejected his application for four years retirement credit for such services.
Mr. Fitzpatrick, Personnel Director, East Baton Rouge Parish School Board, a member of the Teachers' Retirement system since 1947, also applied for credit based on employment at Louisiana Tech as a musician in the school sponsored dance band while enrolled as a student. For these services, he received room, board, tuition, laundry privileges and medical care as compensation instead of wages. In such employment, Fitzpatrick worked from 20 to 40 hours weekly. On March 8, 1973, Fitzpatrick applied for retirement credit for said services; his application was denied.
Dr. Donald L. Hoover, general coordinator, East Baton Rouge Parish School Board, member of the retirement system for 17 years, applied for additional retirement credit in March, 1973. His application was based on services rendered as research assistant in the Department of Entomology, Louisiana State University, while enrolled as an undergraduate, and as research assistant in a project to research the biological effects of radiation, while enrolled as a graduate student. For his services, Dr. Hoover was paid in cash.
At the time of trial in July, 1973, the system had approximately 57,000 active members and approximately 12,000 retired members. Of this total membership, at least eight members were given credit for part-time service while enrolled as students in institutions of higher learning. Seven of such members filed their applications between January, 1971, and April, 1972. The eighth member receiving such credit applied in 1948. On April 6, 1973, the Board formally resolved to deny credit for part-time service. Thereafter Appellants' applications were denied despite their having been filed prior to April 6, 1973.
Retirement credit for employment as a teacher is established in LSA-R.S. 17:600 (A) which, as amended by Act 181 of 1964, reads as follows:
"Any member of the State Teachers' Retirement System may receive credit for service as a teacher, as the term `teacher' *268 is defined in R.S. 17:571, and/or for service in any agency in Louisiana, provided he meets the requirements set forth below:

* * * * * *
(2) Service prior to the 1936-37 school year is considered prior service and credit as a teacher and/or for state service shall be allowed without cost to the member for such service.
(3) In order to receive credit for teaching service, except the restoration of cancelled credit therefor, and/or for other state service rendered subsequent to July 1, 1936, the member shall pay to the retirement system members' contributions on salary earned at the contribution rate which was in effect at the time the service was rendered..."
Prior to the adoption of Act 589 of 1972, "Service" and "Teacher" were defined in LSA-R.S. 17:571(22) and (23) as follows:
"(22) `Service' means service as a teacher within the meaning of Sub-section (3) of this Section.
(23) `Teacher' means any teacher, helping teacher, librarian, secretary, clerk, principal, supervisor, superintendent of public schools, state superintendent, member of the state department of education, president, dean and teacher in any educational institution supported by and under the control of the state, the secretary and staff of the Louisiana Teachers Association and the secretary and staff of the Louisiana High School Athletic Association. In all cases of doubt the board of trustees, as hereinafter defined, shall determine whether any person is a teacher as defined in this Sub-section."
Section 571(23), above, was amended by Act 589 of 1972 to read:
"(23) `Teacher' means any teacher, helping teacher, librarian, secretary, clerk, principal, supervisor, parish or city superintendent or assistant superintendent of public schools; president, vice president, dean, teacher or guidance counselor at any state college or university or any vocational-technical school or institution or special school under the control of the State Board of Education, or any educational institution supported by and under the control of the state or any parish school board; the secretary and staff of the Louisiana Teachers' Association; the president and staff of the Louisiana Federation of Teachers, the Louisiana Education Association; employees of the Teachers' Retirement System; and the secretary and staff of the Louisiana High School Athletic Association. In all cases of doubt the board of trustees shall determine whether any person is a teacher within the scope of the definition herein set forth."
Also germane to the issue at hand is the following definition of "Earnable Compensation", found in LSA-R.S. 17:571(9):
"`Earnable Compensation' means the full rate of the compensation that would be payable to a teacher if he worked the full normal working time. In cases where compensation includes maintenance, the board of trustees shall fix the value of that part of the compensation not paid in money."
On March 29, 1956, the Board resolved to allow full time retirement credit for teachers not attending regular classes. An opinion of the Attorney General issued September 22, 1964, interpreted the statute to allow teachers credit for part-time employment while enrolled as students. On July 11, 1968, the Board formally resolved to disallow credit for part-time student work despite the 1964 opinion of the Attorney General to the contrary. Nevertheless, two persons were allowed credit for such work by Board action on January 13, 1971, the minutes reflecting that the decision was based on the 1964 ruling of the Attorney General.
On each of the following dates, one member was allowed credit for part-time *269 service, namely: June 29, 1971, December 28, 1971, January 27, 1972, March 23, 1972, and April 20, 1972. Pursuant to the Board's request for another opinion, the Attorney General again ruled on May 18, 1972, that teachers were entitled to credit for part-time student employment, and there was no statutory authority for the Board's refusal to grant such credits. On July 14, 1972, the Board authorized its Executive Director to discuss the matter with the Attorney General and seek a solution to the problem inasmuch as a majority of the Board appeared to disagree with the ruling obtained. At a Board meeting held September 21, 1972, the subject matter was discussed and postponed to the next meeting. In January, 1973, the composition of the Board changed from 9 to 14 members. On January 12, 1973, the new Board met and resolved to deny credit for part-time student work. Pursuant to this latter action, Appellants' requests were denied.
In 1973, the legislature enacted Act 157, which amended and re-enacted LSA-R.S. 17:571(22) to provide:
"(22) `Service' means service as a teacher within the meaning of paragraph (23) of this section; provided, however, that no person shall receive credit for student aid or student employment in a college or university or for other part-time employment of similar kind or nature."
The trial court found that the applicable statute allows credit only for full time employment as a teacher within the definition contained in Section 571(23), above, for a salary or wage. Appellants maintain the lower court erred in so holding because: (1) Prior to adoption of Act 157 of 1973, credit for part-time employment was allowed under Sub-sections (22) and (23) of Section 571, and Section 600(A), above; (2) Section 571(9), above, expressly recognized tuition, fees, room, board and other such remuneration as "earned compensation"; (3) Appellants' rights to credit for part-time service became "vested" prior to enactment of Act 157 of 1973, which changed the definition of service to expressly exclude student aid and part-time employment, which rights are constitutionally protected against divestiture by ex post facto laws; (4) The Board is bound by the policy determinations of its predecessor Board which allowed such credit predicated on the prior law and opinions of the Attorney General, and (5) Denial of credit to Appellants and others similarly situated amounts to unlawful discrimination.
We note that the record contains the following exceptions filed by defendant Board: (1) A dilatory exception based on alleged unauthorized use of a summary judgment proceeding, and (2) an exception styled "Exception of no right and no cause of action". These exceptions do not appear to have been passed upon by the trial court. Inasmuch as the exceptions were not argued before this court, either in brief or oral argument, we deem them to have been abandoned by exceptor.
Section 571(22) and (23) set forth the definitions of service and teacher insofar as the terms are material herein. Appellants maintain that the enumeration of agencies included in Section 571(23), as the same existed on the dates of their respective applications, is not exclusive. It is suggested the naming of particular institutions and their staffs is merely illustrative, and that Section 571(23) intended to include the staffs and personnel of all educational institutions. Appellants Kidd and Fitzpatrick contend they are entitled to credit for pre-membership service to the respective educational institutions they served. Appellant Hoover makes the same argument, and further urges that, as a research assistant, he falls within the specific category of helping teacher.
It is well established that opinions of the Attorney General are not law; they are not controlling on the courts; at most they are persuasive. Branton v. Parker, La.App., 233 So.2d 278. We are, therefore, *270 at liberty to make our own interpretation of subject statutes.
Obviously Section 571 (23) does not limit the definition of teacher solely to classroom teachers. It expressly includes clerks, secretaries and others connected with the operation of schools and educational institutions, but not engaged in the teaching profession per se. The apparent purpose of the statute is to include as teachers certain persons who, although they do not actually teach, are directly associated with and render a major contribution to the functioning and operation of the public school system. While the statute does not expressly limit its definition of teachers to those engaged in full time employment, the types of employment therein enumerated are generally full time positions and constitute the principal employment of persons so engaged. We find the statute envisions employment which not only contributed to the furtherance of our educational systems, but which also constituted the principal means of livelihood of the party seeking credit for premembership service. The student jobs or positions held by Appellants do not fall within the class of full time service envisioned by the statute. At the times in question, Appellants were primarily engaged and occupied as students, not employees. Such services as Appellants rendered were merely incidental.
It is of no moment in this instance that the enumerations contained in Section 571 (23), above, may be deemed purely illustrative rather than exclusive. In neither event can Appellants receive credit for the services performed inasmuch as all such services were part-time.
Appellants also place some reliance on the fact that Section 571(9), above, provides that where compensation includes maintenance, the Board shall fix and allow, as earnable compensation, value of that part of the compensation not paid in money. We agree that earnable compensation includes the value of maintenance, where maintenance is provided as part of an employee's compensation. However, we find nothing in the statute which would indicate intent to characterize as earnable income the value of maintenance furnished a part-time employee. Considered together with Section 571(23), which defines Teachers, Section 571(9) can be interpreted only to mean that the value of maintenance may be deemed earnable income only when maintenance is furnished as part of the compensation of a full time "teacher".
Appellants' next contention is that the Board is bound by its former decisions allowing credit for pre-membership part-time service for other members as hereinabove set forth. In so arguing, Appellants do not assert any particular legal principle such as res judicata, estoppel or stare decisis. Appellants merely argue that, since others were granted credit for the same type of service, it is inequitable to deny Appellants like treatment. No authority is cited by Appellants in support of this position. Our own research disclosed no Louisiana jurisprudence on the subject.
Administrative agencies are not bound by prior determinations, and their decisions may not be set aside merely because the agency has, on an earlier occasion, reached a contrary result. Permian Basin Area Rate Cases, 390 U.S. 747, 88 S.Ct. 1344, 20 L.Ed.2d 312.
In 73 C.J.S. Verbo, Public Administrative Bodies and Procedure § 147, the rule regarding res judicata in instances of this nature is stated thusly:
"It has been held to be generally true that administrative agencies are free from the application of the judicial doctrine of res judicata, discussed in Judgments §§ 592-848, as that doctrine may be advanced as to prior administrative determinations; and in many instances it *271 has been held that an administrative determination is not res judicata in subsequent proceedings, even though the agency was performing a judicial function in making the determination. Stated more simply, while the courts may take prior determinations into consideration, an administrative agency is not bound by its own prior determinations; and an administrative determination in which is imbedded a legal question open to judicial review does not impliedly foreclose the administrative agency, after its error has been corrected, from enforcing the legislative policy committed to its charge. The doctrine of res judicata in the strict sense, so as to affect a subsequent judicial action, especially is not applicable to determinations which are not judicial or quasi-judicial or with respect to the determinations of agencies which do not have the power to make a final determination."
As a general rule, the doctrine of stare decisis is not applicable to the decisions of administrative agencies. In 73 C. J.S. Verbo, Public Administrative Bodies and Procedure § 148, page 482, the principle is thusly stated:
"The doctrine of stare decisis, discussed generally in Courts §§ 186-216, is not generally applicable to the decisions of administrative tribunals; nor does a prior administrative determination ordinarily preclude a subsequent one on the grounds of equitable estoppel. Accordingly, administrative bodies are not ordinarily bound by their prior determinations or the principles or policies on which they are based. However, prior determinations are entitled to great weight, as discussed supra § 144, and radical departures from administrative interpretation consistently followed cannot be made except for most cogent reasons."
The record before us discloses that the matter under consideration has been a matter of repeated concern to the Board. The subject has been considered on numerous occasions, and the action of the Board thereon has been marked by some degree of vacillation and indecisiveness. On some occasions, the action taken has been by less than unanimous vote depending upon the composition of the Board when a particular decision was reached. This is amply evidenced by the action taken contrary to rulings of the Attorney General. Under the circumstances, we cannot say that the Board has acted arbitrarily or unreasonably. It appears the Board has been groping for the proper solution, and that the Board's determination of April 6, 1973, denying credit for pre-membership part-time service is the Board's final say in the matter. We find that this decision accords with the intent of the statute.
Appellants' last contention is that their right to credit vested prior to the amendment of Section 571(22) by Act 589 of 1972, prohibiting credit for student aid or student employment or other part-time employment.
The simple answer to this argument is that no such rights were granted under the Act before its amendment by Act 157 of 1973. From the inception, the Act contemplated only full time service by persons whose principal occupation was that of "teacher" as defined in the statute.
The judgment of the trial court is affirmed at Appellants' cost.
Affirmed.