DOMENGEAUX, Judge.
Plaintiff-appellant, L. P. White, instituted this action to recover damages for a battery committed upon him by defendant-appellee, Dewayne C. Morris. Also made party defendant was Morris’ homeowner’s liability insurer, Hartford Insurance Group. Insurance coverage was admitted by Hartford. From a judgment rejecting his demands, plaintiff has appealed. We reverse.
In the early morning hours of November 3, 1974, at approximately 12:30 A.M., plaintiff, a Rapides Parish Sheriff’s Deputy, was patrolling the rural community of Kings-ville, Rapides Parish, Louisiana, in a police cruiser. Accompanying the plaintiff was another deputy, O. C. Tynes. The two deputies were working the 11:00 P.M. to 7:00 A.M. shift and had been previously apprised by their supervisor of the fact that several burglaries had been committed in the Kingsville area recently.
The two deputies were travelling south on Louisiana Highway 165 and had just passed a drive-in type eating establishment known as “Mr. Ed’s”, which was closed, when they noticed a pickup truck parked on the right side of the road. As they approached the parked vehicle in their police cruiser they observed two white males running from the truck in the direction of Mr. Ed’s. By the time the officers turned their vehicle around the two individuals previously sighted had disappeared from their view. They proceeded toward Mr. Ed’s Drive-In, and upon travelling to the rear of the establishment discovered five white youths, one of whom was the defendant, standing around a single automobile.
The deputies parked their vehicle and approached the five young men, requesting their identification. The first two individuals produced satisfactory identification to the officers, however, a third youth stated that he had no identification on his person but informed the officers of his identity and told them that they could call his father at home to verify same. Apparently at that point one of the officers stated words to the effect that “You don’t have to be so damn smart ass about it.” The deputies then proceeded to'request a showing of identification from the defendant, who refused, and stated that “he didn’t have to give no damn identification to nobody.”
The defendant’s identification was again requested, and he began to curse and berate the officers. The evidence is conflicting as to whether either of the officers informed defendant at that point that he was under arrest, but at any rate the record is clear that plaintiff then walked over to defendant and placed his arm on the latter’s elbow, telling him to “come along”. The officers walked with defendant a few feet when Morris began to struggle. The officers again gently prodded defendant toward the cruiser when he became violent and began to fight with the deputies. One of the officers placed a form of headlock on *239 Morris and wrestled him to the ground while the other attempted to handcuff the defendant. However, Morris broke away and removed himself to a point several feet away from the deputies. At that point plaintiff again approached the defendant but did not draw his weapon or billyclub. Defendant then struck plaintiff in the face, knocking him to the ground, and fled from the scene.
The above recitation of the facts of this case is consistent with plaintiff’s version which was essentially supported by the testimony of three of the youths who were present at the scene, Dalton Moore, Gary Wayne McDowell, and Mack Burton, Jr. Said testimony was contradicted only by that of the defendant.
The district judge found that the defendant’s resistance.to tfye actions of Officers Tynes and White was justified and warranted since the officers’ attempt to arrest him was an illegal act. In his written reasons the district judge stated:
“It is clear that the officers had no reason to believe that a crime had been committed or that any of the five boys had committed a crime or were about to commit a crime. The only reason that White attempted to arrest Morris was because Morris refused to give identification when White demanded it.”
We are of the opinion that the trial judge erred in reaching this conclusion.
The defendant and his companions were questioned by the officers pursuant to the authority granted them by LSA-C.Cr.P. Article 215.1 which provides in pertinent part:
“A. A law enforcement officer may stop any person in a public place whom he reasonably suspects is committing, has committed or is about to commit a felony or a misdemeanor and may demand of him his name, address and an explanation of his actions.

Plaintiff and his partner were both law enforcement officials who viewed two individuals running toward a closed place of business at 12:30 A.M. Upon investigation they discovered five unknown individuals congregating near the, business establishment. Furthermore, the officers had been instructed by their superiors to be especially diligent in their lookout for burglary suspects. We find that the factual situation presented by this litigation supports a rea-t sonable suspicion on behalf of the officers, enabling them to at least investigate the circumstances existing at Mr. Ed’s Drive-in in the early morning hours of November 3, 1974.
It is significant to note that the officers did not attempt to arrest the other individual who failed to produce identification, Mack Burton, Jr. The record clearly indicates that the deputies attempted to take the defendant into custody only after he became abusive toward them and gave them a “good cussing”. We find that said behavior on behalf of the defendant constituted a clear violation of LSA-R.S. 14:59 which provides:
“§ 59. Criminal mischief
Criminal mischief is the intentional performance of any of the following acts:

(7) Acting in such a manner as to annoy, disturb, interfere with, obstruct, or be offensive to others;
. . . . . ."[1]
*240 LSA-C.Cr.P. Art. 213 sets forth the conditions under which a lawful arrest may be executed:
“Art. 213. Arrest by officer without warrant; when lawful
A peace officer may, without a warrant, arrest a person when:
(1) The person to be arrested has committed an offense in his presence; and if the arrest is for a misdemeanor it must be made immediately or on close pursuit;

A law enforcement officer making an arrest need not inform the arrestee that he is under arrest and the reason therefor if said individual is currently engaged in the commission of an offense. LSA-C.Cr.P. Art. 218.
An individual is required to submit peaceably to a lawful arrest. LSA-C.Cr.P. Art. 220.
We conclude that plaintiff had reasonable grounds to suspect the possible or potential commission of an offense at Mr. Ed’s on the morning of November 3, 1974, and that he was possessed with the authority to investigate the situation including the request for defendant’s identification. We further find that the plaintiff had probable cause to lawfully arrest the defendant for the commission of an offense in his presence, i. e., criminal mischief, and that the defendant unlawfully resisted said arrest.
However, assuming arguendo that the arrest of the defendant was unlawful and that he was possessed with a right to resist the actions of the officers, we find that in so resisting, the defendant employed excessive force against the plaintiff. The rule is well settled in our jurisprudence that an individual resisting the aggression of. another may use only such force as is necessary to reasonably defend himself, and excessive force will render the “defender” liable for damages. See Watts v. Aetna Casualty and Surety Company, 309 So.2d 402, (La.App. 2nd Cir. 1975), writs denied 313 So.2d 601; Porche v. Fernandez, 286 So.2d 418 (La.App. 4th Cir. 1973); Flores v. Black, 260 So.2d 144 (La.App. 2nd Cir. 1972). In the instant case neither of the officers attempted to injure the defendant in any way. They merely tried to subdue him and there is. no evidence that anyone struck the defendant. Before Morris struck Officer White, the officer approached the defendant in a calm and unthreatening manner and drew neither his pistol nor billyclub. Plaintiff had not even laid a hand on defendant after his first “escape” when Morris struck Officer White in the face with a blow sufficient to fracture his nose and several other facial bones. Under the facts of this case we find that said action on behalf of the defendant was unwarranted and unnecessary.
Having concluded that the tortious act committed upon plaintiff by defendant was without justification and unlawful, we now address ourselves to the issue of damages. As a result of the blow plaintiff received a compound comminuted fracture of the right and left wall maxillary antrum, a fractured nose, and an intracapsular fracture of the left condyle of the mandible. He was taken to Rapides General Hospital for emergency treatment. Thereafter, he required the attention of Dr. Bruce Phillips, an oral surgeon, who performed an open reduction on the fractures. Plaintiff’s jaw was wired together for approximately three weeks, after which time his injuries healed. He suffered no residual disability therefrom.
Although the facial fractures suffered by plaintiff resulted in substantial pain and discomfort for a period of approximately one month, he nevertheless suffered no residual pain or disability. Plaintiff’s treating physician clearly indicated that the fractures had healed completely and satisfactorily. Based upon these findings we are of the opinion that plaintiff is entitled to an award of $5,000.00 as compensation for temporary disability, pain and suffering resulting from the battery. Furthermore, plaintiff incurred two hospital bills in the amount of $394.15 and $197.90, as well as physicians fees of $1,500.00, to which he is entitled.
*241 For the above and foregoing reasons the judgment of the district court is reversed, and judgment is hereby rendered in favor of plaintiff-appellant, L. P. White, and against defendants-appellees, Dewayne C. Morris and Hartford Insurance Group, jointly and in solido, in the amount of $7,092.05, with legal interest thereon from date of judicial demand until paid.
All costs at trial and on appeal are assessed against defendants-appellees.

REVERSED AND RENDERED.

. We are cognizant of the fact that portions of two other penal statutes proscribing somewhat similar behavior have been declared unconstitutional. See LSA-R.S. 14:103 and State v. Adams, 263 La. 286, 268 So.2d 228 (1972). However, see the more recent Fourth Circuit case of Castriotta v. Cronvich, 277 So.2d 744 (La.App. 4th Cir. 1973), which relies upon the statute; LSA-R.S. 14:103.1 and Cox v. State of Louisiana, 379 U.S. 536, 85 S.Ct. 453, 13 L.Ed.2d 471 (1965). However, we do not feel that 14:59, as applied in situations of this type is burdened with the same constitutional deficiencies as the two previously cited statutes.