345 So.2d 461 (1977)
L. P. WHITE
v.
De Wayne C. MORRIS et al.
No. 58692.
Supreme Court of Louisiana.
April 11, 1977.
Rehearing Denied May 13, 1977.
*462 Alonzo P. Wilson, Gist, Methvin & Trimble, Alexandria, for defendants-applicants.
Richard E. Lee, Holt, Wagner & Lee, Pineville, for plaintiff-respondent.
DENNIS, Justice.
L. P. White, a Rapides Parish Deputy Sheriff, instituted this personal injury action against DeWayne C. Morris, who in resistance to White's attempt to arrest him, delivered the officer a damaging blow to the face. Also joined as a defendant was Morris' homeowner's liability insurer, Hartford Insurance Group, which admitted insurance coverage.
At approximately 12:30 a. m. on the morning of November 3, 1974, Deputy White and his partner, O. C. Tynes, were on routine patrol in the small community of Kingsville, located north of Alexandria, Louisiana, on U.S. Highway 165. According to White, because of recent burglaries in the area, the officers had been instructed to be particularly vigilant of business establishments. As they approached a truck parked on the side of the highway just beyond a drive-in restaurant known as Mr. Ed's, two figures ran from behind the truck toward the restaurant, which was closed.
The officers returned to investigate, but by the time they had reached the scene again the two individuals had disappeared from their view. Proceeding to the parking area on the side and toward the rear of Mr. Ed's, the deputies came upon five youths standing outside an automobile.
There is conflict in the testimony as to exactly what occurred after deputies White and Tynes approached the young men. At the trial White relied solely on his own testimony and offered no explanation for not calling Tynes as his witness. Defendants called as their witnesses Morris and three of the youths present at the time of the incident. In his written reasons for judgment the trial judge made factual findings, well supported by the evidence, as follows:
"At this time Mr. Ed's was closed. These boys were around an automobile in a general discussion, as boys in rural communities usually do for entertainment and pasttime [sic]. The plaintiff flashed a light into the back seat of the automobile and observed an ice chest. Without permission, but illegally, plaintiff opened the door of the car, opened the ice chest and observed some beer that was on ice. None of the boys were drinking at the time. The officers asked the boys what they were doing and requested identification of each. Three of the boys produced identification. One of the boys, Mack *463 Burton, Jr., stated that he didn't have a wallet as he had no pockets in his trousers and could not produce identification. He stated: `If you don't believe me, you can call my dad.' In response, White replied: `Don't be a smart ass.' White then asked the remaining boy, DeWayne Morris, for his I.D. whereupon Morris, perturbed by White's previous remark, responded that he did not have to `give no damn I.D.'. White then took Morris by the arm and began leading him to the patrol car. Morris apparently took a few steps in compliance with White's nudging and then changed his mind. Morris jerked away at which point the other officer, Tynes, came to White's assistance. They both attempted to physically overpower Morris. At this time they were against and upon the trunk of the patrol unit. White had an arm lock around Morris' neck. One officer had out some handcuffs and was attempting to place them upon Morris. While doing so the handcuffs were banging against the head of Morris. Morris broke away a second time and White again approached him. Morris correctly analyzed this as further attempt by White and Tynes to physically subdue him, place him in the patrol unit and transport him to jail. As White approached him this last time he struck White in the face, which blow knocked plaintiff to the ground and broke his jaw. Morris then escaped on foot and made it to his home whereupon a short time later two officers came and took him to jail.
"It is not clear whether either of the officers informed Morris that he was under arrest or informed him to accompany them. One of the boys testified that the officers told Morris he was under arrest. White testified that Tynes advised Morris he was under arrest.
"* * *
"It is clear that the officers had no reason to believe that a crime had been committed or that any of the five boys had committed a crime or were about to commit a crime. The only reason that White attempted to arrest Morris was because Morris refused to give identification when White demanded it."
Further inquiry revealed that the boys had not been engaged in any wrongdoing, but that one of them worked at the drive-in which he had locked up shortly before the officers' arrival, two had arrived earlier to visit with a young female employee, and the other boys had congregated there to talk. The evidence does not reflect that the deputies were aware of these facts at the time the altercation arose. However, it does not appear that they had taken any pains to obtain an explanation from the youths before searching the car and demanding identification papers.
The court of appeal overturned the decision of the trial judge, reasoning that the information known to the officers at the time they discovered defendant and his friends behind Mr. Ed's supported a reasonable suspicion of criminal activity, enabling them to further investigate the situation and question the youths. The court further concluded that defendant's abusive language warranted his arrest for criminal mischief, La.R.S. 14:59(7). Even if the arrest were unlawful, the court stated, the force used by defendant in resisting it was excessive. Damages were awarded to plaintiff in the amount of $7,092.05. 337 So.2d 237 (La.App.3d Cir. 1976).
We do not agree that the trial court fell into reversible error in concluding that the officers lacked a basis for reasonably suspecting that DeWayne Morris was committing, had committed or was about to commit a crime. Mr. Ed's drive-in had been closed for only a short time, a fact of which the deputies must have been aware. A well lighted Billups Service Station was situated just across the heavily travelled U.S. 165 highway from the premises. The trial judge, who stated that he was reared very near the place where this incident occurred, found that the officers had no reason to be suspicious because the boys were engaging in a pastime that is common to young boys in a rural community. At the time the deputies demanded identification from Morris *464 they had already searched the car and obtained identifications from all of the other youths without detecting anything suspicious. During the process they had exchanged unpleasant remarks with one of the young men and probably were not in a good humor. Although a trier of fact validly could have reached a different conclusion, the evidence adequately supports the trial judge's finding that the officers did not have grounds for reasonably suspecting Morris of criminal activity and, therefore, were not entitled under the stop and frisk law to demand of him his name, address and an explanation of his actions. La.C. Cr.P. art. 215.1.
However, because of the serious issues raised by the court of appeal opinion, we will assume, for the sake of argument, that the deputies were justified in demanding Morris' name, address and an explanation of his actions. The other questions presented are: Did Morris' refusal to identify himself or his language provide grounds for a legal arrest? If not, was Morris entitled to use reasonable force in resisting an unlawful arrest? Was the force used reasonable?
Article 215.1 itself provides no sanctions for a refusal to comply with an officer's request for information. Inherent in the officer's right to "stop" a suspect and "demand his name, address and an explanation of his actions" is the right to detain him temporarily to verify the information given or to obtain information independently of his cooperation. See, State v. Winesberry, 256 La. 523, 237 So.2d 364 (1970). However, Deputy White unequivocally stated that defendant had been placed under arrest the moment he refused to produce his identification papers. This action was not authorized by Article 215.1, and in fact our law nowhere authorizes an arrest based upon less than probable cause. See, La.C. Cr.P. arts. 202 and 213.
New York courts, interpreting the "stop and frisk" statute after which our own was modelled, have similarly held that an arrest cannot be founded upon an accused's refusal to furnish his identification. N.Y.Cr.Pro.L. § 140.50; People v. Bambino, 69 Misc.2d 387, 329 N.Y.S.2d 922 (1972); People v. Schanbarger, 24 N.Y.2d 288, 300 N.Y.S.2d 100, 248 N.E.2d 16 (1969). In People v. Schanbarger, the court observed:
"* * * While it may be true that there was no reason why the defendant should not have answered the trooper's questions, it equally is true that his failure to answer cannot constitute a criminal act * * *." 300 N.Y.S.2d at 102, 248 N.E.2d at 17.
And the court stated in People v. Bambino:
"This right, however, to detain and investigate on suspicion does not, under any circumstances, and cannot, within recognized constitutional controls, ever justify an arrest on suspicion * * *." 329 N.Y.S.2d at 931.
While Deputy White may have been justifiably angered by Morris' affront to his authority, this alone could not have elevated a reasonable suspicion of criminal activity to probable cause to believe that a crime had been, was being, or was about to be committed so as to justify an arrest.
Plaintiff argues, however, that his authority to arrest defendant derived from La.R.S. 14:108, which makes it unlawful to resist an officer under the following circumstances:
"Resisting an officer is the intentional opposition or resistance to, or obstruction of, an individual acting in his official capacity and authorized by law to make a lawful arrest or seizure of property, or to serve any lawful process or court order, when the offender knows or has reason to know that the person arresting, seizing property, or serving process is acting in his official capacity.
"The phrase `obstruction of" as used herein shall, in addition to its common meaning, signification and connotation mean:
"(a) Flight by one sought to be arrested before the arresting officer can restrain him and after notice is given that he is under arrest.
"(b) Any violence toward or any resistance or opposition to the arresting officer *465 after the arrested party is actually placed under arrest and before he is incarcerated in jail.
"(c) Refusal by the arrested party to give his name and make his identity known to the arresting officer.
"* * *
"Whoever commits the crime of resisting an officer shall be fined not more than five hundred dollars or be imprisoned for not more than six months, or both."
Specifically, plaintiff urges that defendant violated La.R.S. 14:108(c) when he refused to furnish his identification upon demand. This provision by its own terms clearly applies only to an arrested party, and does not provide a basis for the arrest of a mere suspect who refuses to supply information demanded under Louisiana Code of Criminal Procedure article 215.1.
The alternative grounds offered for defendant's arrest by the court of appeal, which apparently were not contemplated by the arresting officers themselves, are equally insupportable. The court ruled that defendant's action in cursing the deputies constituted a clear violation of La.R.S. 14:59(7), which provides:
"Criminal mischief is the intentional performance of any of the following acts:
"* * *
"(7) Acting in such a manner as to annoy, disturb, interfere with, obstruct, or be offensive to others;
"* * *."
Great care must be taken in the regulation of spoken words to punish only classes of speech not protected by the First and Fourteenth Amendments to the United States Constitution, viz., "the lewd and obscene, the profane, the libelous and the insulting or `fighting' wordsthose which by their very utterance inflict injury and tend to incite an immediate breach of the peace." Chaplinski v. New Hampshire, 315 U.S. 568, 62 S.Ct. 766, 86 L.Ed. 1031 (1942). Statutes must be carefully drawn or authoritatively construed so as to be insusceptible of application to protected expression; failing this, they are unconstitutionally overbroad. Gooding v. Wilson, 405 U.S. 518, 92 S.Ct. 1103, 31 L.Ed.2d 408 (1972).
Ignoring this constitutional mandate, the court of appeal attempted to bring within the strictures of a statute, which on its face appears applicable only to offensive actions, words which, particularly when analyzed in context, were protected speech. The trial judge found that defendant's "cursing" did not extend beyond his statement that he did not have to give "no damn i. d." A rather mild profanity to begin with, this statement was provoked by one of the deputies' gratuitous reference to defendant's companion as a "smartass."
In City of New Orleans v. Lyons, 342 So.2d 196 (La.1977), we held that abusive words, including "s___" and "f___ you" uttered to a policeman upon his attempt to question the defendant were protected speech. We said:
"* * * There was no evidence to show, nor does the context herein suggest, that defendant's remarks tended to incite the police officer to an immediate breach of the peace. In fact, when such words are addressed to an officer, one would normally contemplate the need for a stronger showing that the words tend to incite the addressee to an immediate breach of the peace.2 Thus there was lacking in this case the clear and present danger necessary in order to justify the state's interference with defendant's right to speak freely. Schenck v. United States, 249 U.S. 47, 39 S.Ct. 247, 63 L.Ed. 470 (1919).
2 "Justice Brennan of the United States Supreme Court made a similar observation in Lewis v. City of New Orleans when he observed that a police officer is trained to exercise a higher degree of restraint than the average citizen. 415 U.S. 130 at note 2, pp. 132-133, 94 S.Ct. 970, 39 L.Ed.2d 214."
We conclude that La.R.S. 14:59 was inapplicable to defendant's conduct and that his arrest cannot be justified on that or any other ground.
The right to resist an unlawful arrest is of long standing in Louisiana, and has recently been reaffirmed by this Court. *466 City of Monroe v. Ducas, 203 La. 971, 14 So.2d 781 (1943); City of New Orleans v. Lyons, supra.
In City of Monroe v. Ducas, supra, the Court reversed the relators' convictions under a local ordinance making it unlawful to resist a police officer in the discharge of his duties. Michael and John Ducas, members of a religious organization, had called at the home of a black family for the purpose of taking them to a bible study class. This activity impressed a police officer as "dangerous and suspicious" conduct, and he approached relators, demanding to know what they were doing. When Michael Ducas replied that "it was none of [the officer's] business" and attempted to drive away, the officer tried to stop him and was injured. Observing that the relators had not been guilty of violating any law at the time of their arrest, the Court declared:
"The right of personal liberty is one of the fundamental rights guaranteed to every citizen, and any unlawful interference with it may be resisted. Every person has a right to resist an unlawful arrest; and, in preventing such illegal restraint of his liberty, he may use such force as may be necessary." 14 So.2d at 784.
This principle has been codified in our law. La.R.S. 14:108, supra, proscribes resistance to "an individual acting in his official capacity and authorized by law to make a lawful arrest * * *." (Emphasis supplied.) Similarly Article 220 of the Louisiana Code of Criminal Procedure requires that a "person * * * submit peaceably to a lawful arrest." (Emphasis supplied.) Attempts made in the legislature to modify these provisions and abolish the right to resist an unlawful arrest have proved unsuccessful. In 1969, the Louisiana State Law Institute proposed to amend Article 220 and R.S. 14:108, to read as follows:
Proposed amendment to La.C.Cr.P. art. 220:
"When a peace officer is arresting a person, and is identified or identifies himself as a peace officer, it is the person's duty to refrain from using force or any weapon in resisting arrest regardless of whether or not the arrest is lawful.
"* * *."
Proposed amendment to La.R.S. 14:108:
"Resisting an officer is the intentional opposition or resistance to, or obstruction of, a peace officer acting in his official capacity in making an arrest, detaining an arrested person after arrest, seizing property, or serving any process or court order. When the officer is identified or has identified himself as a peace officer, the opposition, resistance, or obstruction shall be an offense, regardless of whether or not the arrest, detention, seizure of property, or service of process was lawful.
"* * *." Report of the Louisiana State law Institute Council Meeting of December 12, 1969.
These proposals were considered in the 1970 regular session of the legislature, see, House Bills Nos. 88 and 89, and rejected. 1970 La. Legislative Calendar, p. 26. Another such attempt failed in the 1975 regular session. See, House Bill No. 563. 1975 La. Legislative Calendar, p. 164.
Plaintiff urges that we join the several American states which have abandoned the centuries old common-law right to resist an unlawful arrest, see, Queen v. Tooley, 2 Ld.Raym. 1297, 92 Eng.Rep. 349 (K.B. 1710); John Bad Elk v. United States, 177 U.S. 529, 20 S.Ct. 729, 44 L.Ed. 874 (1900), by adopting the view that a citizen may not resist an arrest by one whom he knows, or has reason to know, is an authorized peace officer, regardless of whether the arrest is lawful or unlawful. See, Ann., "Modern Status of Rules as to Right to Forcefully Resist Illegal Arrest," 44 A.L.R.3d 1078. In light of our legislature's conscious rejection of such a rule, we cannot abrogate our citizens' time honored right to resist an unlawful arrest.
Indeed, there is respectable judicial and scholarly authority for the proposition that the right to resist an unlawful arrest is protected as part of the guaranty against unreasonable seizures of the person by the *467 Fourth Amendment to the United States Constitution. See, Wainwright v. New Orleans, 392 U.S. 598, 610, 88 S.Ct. 2243, 2253, 20 L.Ed.2d 1322, 1328 (1968) (Douglas, J., dissenting) (per curiam dismissal of certiorari as improvidently granted); United States v. Di Re, 332 U.S. 581, 594, 68 S.Ct. 222, 228, 92 L.Ed. 210, 220 (1948); Chevigny, The Right to Resist an Unlawful Arrest, 78 Yale L.J. 1128 (1969); Comment, 31 La. L.Rev. 120 (1970). Furthermore, we should not overlook the perhaps broader protection of personal liberty afforded by our state constitution which secures a citizen against unreasonable "invasions of privacy" as well as unreasonable searches and seizures. La. Const. of 1974, Art. I, § 5.
We agree with the trial judge that defendant, in exercising his right to resist the unlawful arrest, used only so much force as was necessary to repel the officer's aggression. The evidence indicates that a single blow struck by defendant gave rise to this litigation. Prior to that time, defendant had been manhandled by Deputy White, who wrestled defendant to the ground and gripped him in an armlock around his throat. Defendant's struggles brought him a momentary release from this difficulty, but after his retreat from the affray, White advanced upon him again. In finding that Morris used excessive force in his defense, the court of appeal noted that "the officer approached the defendant in a calm and unthreatening manner and drew neither his pistol nor billyclub." Neither did the defendant arm himself, however, and only after his verbal warning was ignored did he employ physical force; he struck one blow with his first and ran. Under the circumstances, we consider that the force used was reasonable. See, Pohl v. Licata, 236 So.2d 259 (La.App.4th Cir. 1970); Tripoli v. Gurry, 253 La. 473, 218 So.2d 563 (1969); Caroli v. Britt, 284 So.2d 188 (La.App.2d Cir. 1973); Flores v. Black, 260 So.2d 144 (La.App.2d Cir. 1972).
For the foregoing reasons, the judgment of the Third Circuit Court of Appeal is reversed and set aside, and the judgment of the trial court dismissing plaintiff's suit is reinstated. Costs are assessed against plaintiff.
SANDERS, C. J., dissents, being of the opinion that the judgment of the Court of Appeal is correct. See 337 So.2d 237.
SUMMERS, J., dissents.
DIXON, J., concurs, fully subscribing only to the principal holding.
MARCUS, J., dissents and assigns reasons.
MARCUS, Justice (dissenting).
I respectfully dissent. The plaintiff, Officer L. P. White and his partner, Officer O. C. Tynes, had reasonable cause to stop and investigate when they saw two figures run from behind a parked truck toward a closed restaurant at 12:30 a. m. in an area where a number of burglaries had recently been committed. When the officers discovered five young men in the parking lot of the closed business establishment, they had reasonable cause to detain the youths and demand their names, addresses and an explanation of their actions. La.Code Crim.P. art. 215.1. When one of the youths, DeWayne Morris, refused to comply with the officer's lawful request, the officer attempted to escort him in the direction of the patrol car. At that point, while still subject to reasonable investigatory detention, Morris broke away and ultimately struck Officer White in the face as the officer and his partner tried to subdue him. In my view, the striking of a police officer during a lawful period of investigatory detention constitutes a breach of a civil duty requiring the defendant, Morris, to respond in damages.