Julia ADAMS

v.

Trooper W.J. THOMPSON, et al.

Ira Paul THIBODEAUX

v.

Trooper W.J. THOMPSON, Jr., et al.

Civ. A. Nos. 80–229–A, 80–257–A.

United States District Court,
M.D. Louisiana.

Feb. 16, 1983.

Robert L. Kleinpeter, Baton Rouge, La., for plaintiffs.

Ronald A. Seale, Baton Rouge, La., for defendant.

JOHN V. PARKER, Chief Judge.

In these consolidated actions, plaintiffs claim damages for alleged deprivation, under color of state law, of their right to be free from unlawful arrest and detention under the Fourth Amendment. The actions are brought under 42 U.S.C. § 1983[1] against the arresting state police officer and jurisdiction over such actions is vested in this court by 28 U.S.C. § 1343(a)(1). Plaintiffs also assert pendant claims for damage under Louisiana law arising out of the same activities and the defendant, Trooper Thompson, has filed a counterclaim against both defendants, asserted under state law, claiming damages for injuries he received at the time of the arrests.

I.

FINDINGS OF FACT

The testimony surrounding the incidents leading to the arrests of plaintiffs, Julia Adams and Ira Thibodeaux, is hopelessly and directly conflicting, particularly as regards the principal actors. Witnesses to an event frequently see and relate what they saw differently, even when all are striving to tell the truth, "As they saw it." An event or happening involving multiple individuals complicates the situation and some

---

1. Section 1983 reads as follows: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

of the factors which influence the accuracy and completeness of a witness's post-event testimony are, his location and distance from the action, his eyesight and hearing the direction of his attention when the event began, the lighting conditions, the witness's status as participant in the event, or observer, his degree of excitement or tension, his interest in or relationship to the event and the participants therein and his subsequent discussions of the event, if any, with others. Accordingly, it is not surprising that witnesses who were not personally involved and were at different locations saw things differently in this case; nor is it surprising that few of them observed all of the relevant action and that the testimony has presented a mosaic which the court has had to piece together.

After carefully considering all of the evidence offered in this case, I find that the preponderance of the evidence establishes the following facts.

At 9:30 or 10:00 P.M. on the evening of May 26, 1979, a two vehicle accident occurred near the intersection of Louisiana Highways 68 and 964, a rural residential area of East Feliciana Parish. One of the vehicles was operated by Maurice Adams, Jr., the son of plaintiff, Julia Adams. Occupants of the other vehicle were seriously injured.

Plaintiff, Mrs. Adams, her husband, Maurice Adams, Sr., and family reside and operate a retail grocery store in Jackson, Louisiana, a few miles north of the scene of the accident.

Earlier on the day of the accident, the eldest Adams' daughter was married and the wedding party broke up at around 5:30 or 6:00 P.M. Mrs. Adams denies that alcoholic beverages were served at the wedding reception and she denies having imbibed alcoholic beverages herself and there is no evidence to the contrary.

After the accident, a number of other vehicles stopped near the scene to assist or to observe. A crowd of fifteen to twenty persons eventually gathered, including plaintiff, Ira Thibodeaux and assorted members of the Adams' family.

Mrs. Adams came to the scene and after ascertaining that her son, Maurice Adams, Jr., was uninjured, returned to Jackson to close up the business and take care of other matters. Her husband remained at the scene; the vehicle he was driving had sustained a flat tire.

Mrs. Adams left the accident scene prior to the arrival of the defendant, Trooper Thompson, and she was under instructions to return to retrieve the members of her family who remained at the scene.

The first law enforcement officers to arrive at the scene were Marshal Glen Nesser and Chief of Police Paul Littlefield, Jr. of Clinton. They assisted with removal of the injured persons by ambulance and began directing traffic around the wrecked vehicles, which were partially obstructing the highway.

Defendant, W.J. Thompson, Jr., was dispatched to the scene by radio and when he arrived, the injured had already been removed.

Defendant, Thompson, was quite concerned about the number of people milling about in the highway and he repeatedly ordered people to remove themselves from the road. Few did. Defendant, Thompson, had words with several people in the crowd of fifteen to twenty, including both Maurice Adams, Sr. and Maurice Adams, Jr.

No violence was threatened by any member of the crowd but several apparently continued to ignore the trooper's demands that they remove themselves from what the trooper considered to be a place of danger, the highway.

After closing her establishment, Mrs. Adams returned to the accident scene for the purpose of transporting her husband, son and daughter to their home. She approached the defendant and from that point on the testimony is completely contradictory.

Defendant, Thompson, states that Mrs. Adams began screaming, hysterically, after he ordered her off the highway and that when the trooper extended his right arm

pointing toward to the side of the road, she suddenly struck him on the arm with both clinched fists. The trooper says he then informed her that she was under arrest, she resisted and was assisted in her resistance by plaintiff, Thibodeaux.

Mrs. Adams and Thibodeaux, on the other hand, deny that Mrs. Adams screamed until after the trooper grabbed her and they claim that Thibodeaux simply prevented her from falling to the ground on one occasion during the tussle with the trooper.

Both of these stories are corroborated and contradicted by other testimony.

Mrs. Adams may have struck the trooper with either or both fists during the fracas but she did not strike him prior to being placed under arrest.

Defendant Thompson evidently thought that Mrs. Adams was one of those persons whom he had repeatedly ordered to leave the roadway. She was not. When Mrs. Adams walked into the roadway, the trooper abruptly ordered her to leave. Mrs. Adams was attempting to locate the other members of her family and she did not move as quickly as the trooper thought she should. She may have made some comment to the trooper. The defendant then informed Mrs. Adams that he was placing her under arrest; he reached for her for the purpose of placing handcuffs on her and she resisted. In the ensuing scuffle, Mrs. Adams' blouse was torn, exposing her breast and she received bruises to her left arm and other portions of the upper part of her body.

Plaintiff, Thibodeaux, did prevent Mrs. Adams from falling to the ground and he was hit on the forehead by the defendant trooper. Mrs. Adams and Thibodeaux claim that the trooper hit both of them with his pistol but the evidence predominates that the trooper used his hands. The defendant was wearing a ring which could have caused bruises of the type received by both plaintiffs. At some point the trooper did draw his weapon and he waved it at the crowd and at another point the weapon fell to the ground but I do not find that he hit anyone with it.

The defendant, Thompson, called for assistance and eventually Mrs. Adams and Thibodeaux were handcuffed, placed in the patrol car and taken to the East Feliciana Parish jail where they were charged with interference with an officer in violation of LSA–R.S. 40:1390, resisting arrest in violation of LSA–R.S. 14:108 and simple battery in violation of LSA–R.S. 14:35. The trooper's testimony indicates that the alleged simple battery, Mrs. Adams striking him on the arm, was the initial cause for the arrest.

Mrs. Adams' bruises required about three months and two or three visits to a physician to completely heal. Thibodeaux also visited a physician but had no serious injury.

Plaintiffs, Adams and Thibodeaux, were both arrested without a warrant. Neither plaintiff had committed any offense and there were no circumstances existing at the time of the arrests which would reasonably indicate that either had committed or was about to commit an offense. There was no probable cause for the arrests of either plaintiff.

## II.

### CONCLUSIONS OF LAW

The Congress has provided 42 U.S.C. § 1983 as a vehicle to seek money damages for violation of a person's right to be free from illegal arrests. *Monroe v. Pape*, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961); *Nesmith v. Alford*, 318 F.2d 110, reh. denied, 319 F.2d 859 (5th Cir.1963), cert. denied, 375 U.S. 975, 84 S.Ct. 489, 11 L.Ed.2d 420 (1964).

In making these arrests, the defendant, a state trooper, was clearly acting under "color of law," as the jurisprudence has defined that term. *Monroe v. Pape,* supra.

While a plaintiff in a 1983 action bears the burden of proof, just as does the plaintiff in any other civil action, once the plaintiff shows that the arrest was without a warrant, the burden of persuasion to establish probable cause shifts to the arresting officer. *Manuel v. United States,* 355

F.2d 344 (5th Cir.1976). Probable cause for an arrest is a matter of federal constitutional law, not state law. *Hamilton v. Chaffin,* 506 F.2d 904 (5th Cir.1975); *Gandy v. Panama City,* 505 F.2d 630 (5th Cir.1974); *Martin v. Blackburn,* 581 F.2d 94 (5th Cir. 1978). The probable cause burden which defendant bore was to demonstrate that at the moment each of these arrests was made, the facts and circumstances within his knowledge were sufficient to warrant a prudent man in believing that plaintiffs had committed or were committing an offense. *Beck v. Ohio,* 379 U.S. 89, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964); *Sibron v. New York,* 392 U.S. 40, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968); *Adams v. Williams,* 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972); *Gerstein v. Pugh,* 420 U.S. 103, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975). A battery committed upon a police officer (or anyone else) certainly constitutes a violation of state law and certainly would constitute probable cause for immediate arrest.

■ Defendant here has not carried his burden of proving probable cause by showing any battery committed upon him by Mrs. Adams prior to her arrest. Since Thibodeaux did not strike the officer—he only prevented Adams from falling to the ground, the provisions of the simple battery statute, LSA–R.S. 14:35, under which both plaintiffs were charged, can not justify either arrest.

Turning to the other charges, we must determine whether the facts and circumstances within the knowledge of the defendant, Thompson, were sufficient to warrant a prudent man concluding that either plaintiff was committing or was about to commit a violation of LSA–R.S. 14:108 or LSA–R.S. 40:1390.

■ Section 108 proscribes "opposition to" or "obstruction of" an officer, "when the offender knows or has reason to know that the person arresting, seizing property, or serving process is acting in his official capacity." Louisiana jurisprudence has restricted the application of § 108 to its statutory language and, if the officer is not engaged in one of the three stated activities, namely, attempting to seize property, serving process, or making a lawful arrest, then a person who opposes him can not be guilty of a violation of § 108. *State v. Lindsay,* 388 So.2d 781 (La.1980); *State v. Huguet,* 369 So.2d 1331 (La.1979); *State v. Grogan,* 373 So.2d 1300 (La.1979).

■ Officer Thompson was investigating the circumstances of a traffic accident, certainly an official and very important duty, but he was clearly not attempting to seize property, to serve process, or to make an arrest (prior to the incident in question) and thus no prudent person could have reasonably concluded that either of these plaintiffs was committing or was about to commit a violation of § 108. Section 108 can not serve as the predicate for a conclusion that there was probable cause to arrest either plaintiff.

■ Section 1390 applies exclusively to officers of the Department of Public Safety and it is directed against any person, "who resists arrest ... or who interferes with or obstructs ... any officer, in the lawful performance of any duty imposed on him ..." Although we have found no Louisiana jurisprudence which interprets Section 1390, that statute is directed at conduct similar to that covered by Section 108. It is probable that Louisiana courts would construe the "interference" and "obstruction" contained in Section 1390 to be the equivalent of the "opposition" and "obstruction" contained in Section 108; thus jurisprudence considering Section 108 should also be instructive in interpretation of Section 1390. Louisiana jurisprudence consistently holds that where § 108 is applicable, verbal opposition to an officer, even abusive language and cursing, does not constitute the "opposition" and "obstruction" proscribed by § 108. *White v. Morris,* 345 So.2d 461 (La.1977); *Norrell v. City of Monroe,* 375 So.2d 159 (La.App. 2nd Cir.1979); *Malone v. Fields,* 335 So.2d 538 (La.App. 2nd Cir.1976).

■ While Mrs. Adams may have had words with the trooper, she did not offer any physical resistance to him prior to the arrest. Accordingly, no prudent person

could have reasonably concluded from the circumstances that Mrs. Adams was committing or was about to commit a violation of § 1390. This section can not provide probable cause for her arrest, either.

■ Since there was no probable cause for her arrest, Mrs. Adams, under both federal, *United States v. Di Re,* 332 U.S. 581, 68 S.Ct. 222, 92 L.Ed. 210 (1948), and state law, *State v. Lindsay,* 388 So.2d 781 (La. 1980); *White v. Morris,* 345 So.2d 461 (La. 1977); *City of Monroe v. Ducas,* 203 La. 971, 974, 14 So.2d 781 (1943); *State in the Interest of Lewis,* 386 So.2d 1079 (La.App. 3rd Cir.1980); case note, 38 Louisiana Law Review 840 (1978), The Right to Resist Unlawful Arrest, was entitled to resist the unlawful arrest. Her resistance, even physical resistance, to the trooper's unlawful arrest can not provide probable cause for her arrest. Likewise, Thibodeaux's activities, even if he assisted Mrs. Adams in the resistance to the unlawful arrest can not provide probable cause for his arrest.

■ While the state may, within constitutional limits, define criminal conduct, and even the circumstances under which arrests may be made, *Patterson v. New York,* 432 U.S. 197, 97 S.Ct. 2319, 53 L.Ed.2d 281 (1977); *Irvine v. California,* 347 U.S. 128, 74 S.Ct. 381, 98 L.Ed. 561 (1954); *United States v. Walker,* 514 F.Supp. 294, n. 24, (E.D.La.1981), the Fourth Amendment, made applicable to the states by the due process clause of the Fourteenth Amendment, *Wolf v. Colorado,* 338 U.S. 25, 69 S.Ct. 1359, 93 L.Ed. 1782 (1949), limits all arrests to those made upon probable cause. *Pierson v. Ray,* 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967). *Monroe v. Pape,* 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961).

A person arrested without probable cause has been deprived of a right under the Constitution and 42 U.S.C. § 1983 provides him a means for redress. Accordingly, the court finds that both plaintiffs have established their right to recover from the defendant under § 1983.

■ The court also finds that both plaintiffs are entitled to recover under their pendent state law claims since Louisiana holds that an arresting officer is liable for false arrest or false imprisonment when he makes a warrantless arrest for a misdemeanor allegingly committed in his presence where the offense complained of was actually not committed.[2] *Pearson v. Great Southern Lumber Co.,* 134 La. 117, 63 So. 759 (1913); see also *White v. Morris,* 345 So.2d 461 (La.1977).

As counsel for plaintiffs concedes in brief, the physical injuries inflicted here were slight. The constitutional deprivation, however, was not. Every individual has the right to be free from unreasonable or arbitrary interference by police officers and has a right of constitutional dimension to be free from unlawful arrest and detention. *Jenkins v. Averett,* 424 F.2d 1228 (4th Cir. 1970); *Pritchard v. Perry,* 508 F.2d 423 (4th Cir.1976).

■ Mrs. Adams was frightened, humiliated and embarrassed, her clothing was torn, she suffered bruises and she was unlawfully deprived of her freedom. For this experience, she is entitled to an award of $15,000.00 and an additional $1,500.00 for her physical injuries. Plaintiff, Thibodeaux, suffered a slight cut over the eyebrow and he was also unlawfully deprived of his freedom. He is entitled to an award

---

**2.** While federal jurisprudence under the common law based § 1983 accords a law enforcement officer a qualified good faith immunity from liability, *Harlow v. Fitzgerald,* —— U.S. ——, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982), Louisiana apparently does not recognize a similar defense to actions brought under Article 2315 of the Civil Code for false arrest and detention. *Pearson v. Great Southern Lumber Co.,* 134 La. 117, 63 So. 759 (1913); *White v. Morris,* 345 So.2d 461 (La.1977). Good faith immunity is an affirmation defense, *Dennis v.*

*Sparks,* 449 U.S. 24, 101 S.Ct. 183, 66 L.Ed.2d 185 (1980); *Gomez v. Toledo,* 446 U.S. 635, 100 S.Ct. 1920, 64 L.Ed.2d 572 (1980), which must be specially pleaded, Rule 8(c), Fed.R.Civ.P., Art. 1005, La.C.C.P., and the defendant has not asserted that defense here. Consequently, it would be error to consider the issue. *Gomez v. Toledo,* supra; *Williams v. Treen,* 671 F.2d 892 (5th Cir.1982); *Barker v. Norman,* 651 F.2d 1107 (5th Cir.1981); *Barrett v. Thomas,* 649 F.2d 1193 (5th Cir.1981).

of $10,000.00 for deprivation of his freedom and $250.00 for his physical injuries. Both awards will carry interest according to law.

Plaintiffs have also prayed for attorney's fees. Each is entitled to recover attorney's fees under 42 U.S.C. § 1988. *Newman v. Piggie Park Enterprises, Inc.*, 390 U.S. 400, 88 S.Ct. 964, 19 L.Ed.2d 1263 (1968); *Brown v. Culpepper*, 559 F.2d 274 (5th Cir.1977); *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir.1974). Counsel for plaintiffs shall submit the information required by *Johnson v. Georgia Highway Express, supra*, in order that attorney's fees may be assessed.

Defendant's counterclaim will be DISMISSED.