MARVIN, Judge.
We granted a writ to review the correctness of defendant’s convictions of resisting an officer and of battery of a police officer. LRS 14:34.2, 108. We find that the State did not prove beyond a reasonable doubt that defendant committed a battery on the officers and that defendant’s intentional resistance of the officers was in response to the unlawful restraint (arrest) and was not criminal conduct defined by LRS 14:108. Accordingly, we reverse the convictions and discharge defendant.
FACTS
We review the evidence most favorably in support of the prosecution, recognizing that it is the State’s duty to prove every element of the crimes charged beyond a reasonable doubt. LRS 15:271; Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).
The sheriff and his deputy were investigating a complaint that defendant’s 10-year-old daughter had made one or more obscene telephone calls. Defendant told the deputy who had inquired by telephone that her daughter had not been making the telephone calls, that her telephone was malfunctioning and would not make a call but would receive a call. She hung up on the deputy, according to the State. Shortly after this telephone conversation, the sheriff and his deputy drove to the home of defendant in Lake Providence to further investigate. As they parked and exited their patrol van they saw defendant hurriedly depart from the back door of her home and enter a neighbor’s house. Defendant explained that she went to her neighbor’s home to use the telephone to call the Lake Providence town marshal *718 (Chief Marshall) after seeing the patrol car stop in front of her house.
The sheriff and his deputy entered the screen porch of the neighbor’s house with permission of the neighbor.[1] The telephone was just inside the front room of the house. The sheriff immediately went to the defendant insisting that she go with him to the sheriff’s office with her daughter to “talk to them.” Defendant explained she was trying to reach the town marshal. The sheriff, on direct examination, testified
she ... made the remark ... whenever ... Chief Marshall ... gets around here ... ain’t nobody going to mess with me. And I [said] if Chief Marshall comes around here and interferes in our work ... he might end up in jail himself. And that is what I meant ...
She hung up the phone ... She dialed another number ... I says, Mrs. Siggers ... all we want to do is talk to you about a phone call your daughter made and we cannot talk to her unless you are with her. And she kept saying, I’m not going anywhere. And ... the third phone call she made, evidently she was talking to her mother ... but I says, now Mrs. Siggers we have been nice to you. I says, it don’t make a damn who you are talking to, you’ve got to come talk to us at the sheriff’s office with your daughter. And when I said that, she slung the phone and she says, I’m not going nowhere. And ... the phone hit me up side the face.
And [deputy Hall] says ... we are not going to have that ... you have got to go with us up to the sheriff’s. She said I’m not going anywhere. So, Hall got his handcuffs ... and handcuffed one hand. And she was still steady slapping and fighting ... I grabbed the other hand and Hall put the handcuff on ... We says, now you have got to go to the sheriff’s office with us. And she kept saying she wasn’t going anywhere. She just kept fighting ... she ran into the screen door ... still steady fighting ... all the way to the car ... then the two city police came up. They said, Mrs. Siggers, ... .go ahead and get in the car and go on up there ... all they want to do is talk to you ... we kept telling her [that]. She kept saying she wasn’t going no where. And she fought us all the way to the sheriff’s office. For no reason at all. All we wanted to do was talk to her. A kid that was a juvenile. We had no charges on them. All we wanted to do was talk to her. And she wasn’t going to come period. Paragraphs supplied.
On cross-examination, the sheriff, answering whether he indicated to defendant that she was going to talk to him “one way or another,” said
Well, she was going to come to the courthouse. When we go after somebody, we are coming back with them. We are not going to walk away.
The officers said that when the sheriff told defendant it didn’t make a damn to whom she was talking, she was going downtown, the defendant struck the sheriff with the handset of the telephone.[2] Answering whether the strike was intentional, the sheriff said,
I couldn’t say whether it was intentional or not ... She was angry ... For what reason, I don’t know. Now whether she had intended to hit me, I don’t think she had no intentions to hit me with the phone, no. But she did have intentions to kick me ... she was just fighting everything. Just like somebody ... going off the rocker.
Deputy Hall testified:
... the sheriff told her ... if [Chief] Marshall comes in and interferes with *719 what I’m doing, he will be arrested ... She throwed ... her hands back with the telephone ... and she struck the sheriff ... I was standing in the doorway ... And uh, at that time I had Mrs. Siggers’ arm like this, you know. He told me to put the cuffs on her. He said maybe this is the only way we can get you to go to the sheriff’s office. I had one arm. She was scuffling and kicking ... And when we got out in the yard, I was trying to get her to go the the van ... to bring her to the sheriff’s office. And she kept on saying, I’m not going anywhere. I’m not going to do this. And y’all are not going to take me. [The city officers] drove up ... She got calm for a little bit, but then again she started. She wouldn’t get in the vehicle ... You have to kind of put a little restraint.
The sheriff’s deputy explained that “after [defendant] assaulted [sic] the sheriff, she was handcuffed and placed under arrest.” [3] Defendant denied hitting the sheriff with the handset but admits that she began screaming, hitting, and kicking when the officers attempted to handcuff her.
Defendant contends her initial detention or arrest was unlawful and that she could legally resist and that the evidence was not legally sufficient to convict her of either the battery or the resisting charge.
The State argues no arrest was made until after the battery and that while a citizen may resist an unlawful arrest, it would be “better and safer ... for a citizen to submit [to an unlawful arrest] and sue [for civil damages] under such circumstances.” The trial court found that no arrest occurred until after the defendant hit the sheriff with the handset. We must respectfully disagree with this finding. The State suggests that defendant was obviously irate, denying that her daughter made any calls and slamming the telephone down to end the telephone conversation with the deputy; that defendant locked her door, ran out of the house when the sheriff arrived, trying not to be seen, and telephoned the town marshal for no other purpose than to have him come and interfere with the sheriff in lawful pursuit of his duties; and that, by her words, attitude, and actions, defendant set out from the beginning to obstruct and interfere with the officers, and is not an “innocent, law-abiding citizen, but a rough, tough, troublemaker with visions of lawsuits dancing in her head.”
BATTERY
The principal element of battery is the intentional use of force upon another. LRS 14:33. Battery of a police officer has three elements: the intentional use of force upon a police officer, without the consent of the officer, when the offender knows or should reasonably know that the victim is a police officer acting within the performance of his duty. LRS 14:34.2. Each of the elements of the crime must be proved beyond a reasonable doubt. LRS 15:271.
Even when viewed in the light most favorable to the prosecution and even assuming arguendo that defendant’s conduct was voluntary and consciously willed, the evidence does not prove beyond a reasonable doubt the intent element of the crime charged. Criminal conduct is an act (voluntary or consciously willed) that produces certain criminal consequences. LRS 14:8. The intent element does not relate to conduct, but to whether the circumstances surrounding the conduct indicate that the con *720 sequences of that conduct (the striking of the handset against the head of the sheriff) were either “actively desired” by defendant (specific intent), or believed by defendant to be reasonably certain to result (general intent), from that conduct. LRS 14:9-10.
Defendant’s conduct was described by the law officers as a “throwing or slinging back of her hands.” Defendant emphatically denied hitting the sheriff with the handset. The sheriff said “I don’t think she had no intentions to hit me with the phone, no. But she did have the intentions to kick me.” This explanation indicates the sheriff’s understanding of the element of intent insofar as intent relates to the desired or the reasonably expected consequences of defendant’s conduct. The sheriff effectively explained that defendant reasonably expected the criminal consequences that her kicks, and not the handset, would strike the sheriff (I don’t think she had no intentions to hit me with the phone, but she did have intentions to kick me).
Because of the failure of the State to prove the intent element of the crime of battery beyond a reasonable doubt, we must reverse defendant’s conviction for that offense. Jackson v. Virginia, supra; LRS 15:271.
RESISTING
Resisting an officer contains three elements; the intentional resistance of an officer authorized by law to make a lawful arrest, when the offender knows or should know the officer arresting is acting in his official capacity. LRS 14:108. Mrs. Sig-gers knew the sheriff was acting in his official capacity. He told her he was investigating the complaint of obscene phone calls and wanted to talk to her daughter downtown in Mrs. Siggers’ presence. Her resistance (the steady fighting, kicking, screaming) was voluntary and consciously willed and she reasonably expected or desired that her blows would produce consequences that would cause the officers to cease their efforts to take her downtown.
Arrest, like detention, is a question which must be judicially determined, objectively and in retrospect or hindsight, in the light of the circumstances of the particular case. State v. Thompson, 899 So.2d 1161, 1167 (La.1981), and cases discussed therein.
When any person has been arrested or detained in connection with the investigation or commission of any offense, he shall be advised fully of the reason for his arrest or detention [and given the Miranda warnings or advice] ... CCrP Art. 218.1 (Emphasis added.)
Factors that are relevant to the retrospective determination include the intent of the officer, determined subjectively, and the belief of the person being detained or arrested, determined objectively, that she is being restrained. Thompson, supra, at 1165; CCrP Art. 201.
The sheriff’s subjective intent to actually restrain Mrs. Siggers’ liberty (CCrP Art. 201) is determined from his statements to her,
... if Chief Marshall comes around here and interferes ... he might end up in jail himself.
* * * * * *
... it don’t make a damn who you are talking to you’ve got to come talk to us at the sheriff’s office ...
and his explanation of his statements,
Well, she was going to come [with us] to the courthouse. When we go after somebody, we are coming back with them. We are not going to walk away.
Mrs. Siggers’ belief that she was under restraint is to be determined objectively, also in retrospect, from the totality of the circumstances. It is more than reasonable to conclude from the circumstances described, after repeated protests and attempts to solicit help from another officer and from her mother, that her liberty was restrained and that she was forced to go with the officers to the sheriff's office. This conclusion is valid from objective analysis even though the magic word “arrest” was never mentioned. An arrest is accomplished either by announced or by *721 actual restraint and not solely by the pronouncement by an officer that one is under arrest. CCrP Art. 201, State v. Hargrave, 411 So.2d 1058 (La.1982); State v. Morvant, 384 So.2d 765 (La.1980); State v. Sterling, 444 So.2d 273, 462 So.2d 290 (La. App. 1st Cir.1983). When the sheriff told Mrs. Siggers that she had to go to the sheriffs office with him after she had said she was not going anywhere, sufficient or significant restraint was then placed upon her liberty to constitute an arrest under CCrP Art. 201. Restraint may be imposed by either or both an officer’s words and actions. Thompson, Hargrave, Morvant, and Sterling, cited supra. This restraint of defendant occurred before and not after she slung or threw her hands back and struck the sheriff with the telephone handset.
Although the officers, understandably, may have become angered and frustrated because Mrs. Siggers did not cooperate with them as they expected, the restraint (arrest) of defendant is not justified in this record. White v. Morris, 345 So.2d 461 (La.1977).
A citizen may resist an unlawful arrest. White, supra, State v. Lindsay, 388 So.2d 781 (La.1980). A person is required to submit peaceably to a lawful arrest. CCrP Art. 220. Resisting an officer is criminal conduct when the offender intentionally opposes or resists an officer who is authorized by law to make a lawful arrest when the offender should know that the officer arresting her is acting in his official capacity. LRS 14:108; CCrP 213(3). Conduct, otherwise criminal, is legally justified under LRS 14:18(2) when it is a reasonable accomplishment of an arrest which is lawful under the Code of Criminal Procedure. The State concedes that the sheriff did not have reasonable-probable cause to arrest defendant for any offense when they went to her home. We find no reasonable-probable cause in the circumstances after the sheriff arrived at defendant’s home.
As we have said, it is understandable that the officers were frustrated and angered because Mrs. Siggers did not cooperate with their investigation. We heartily agree that law officers deserve the respect and support of officials and citizens. Lewis v. City of New Orleans, 415 U.S. 130, 94 S.Ct. 970, 39 L.Ed.2d 214 (1974); see 269 So.2d 459. Nonetheless, trained police officers are held to a higher degree of restraint or coolness than the average citizen to avoid physical retaliation, even to “fighting words” such as “g.d. m.f. police ...” Malone v. Fields, 335 So.2d 538, 541-2 (La.App. 2d Cir.1976).
Defendant’s resistance (hitting, kicking, screaming) during the officers’ attempts to handcuff her and forcibly take her to the police vehicle was not of a lawful arrest under CCrP 213(3), and was not resistance under LRS 14:108. This element of that crime has not been proved. We do not determine at this juncture in a criminal prosecution whether the force employed by defendant exceeded the reasonable force allowed her under the law to resist an unlawful arrest.
DECREE
Defendant’s convictions are therefore REVERSED and defendant is discharged.

. The neighbor's daughter testified contrary to the officers, stating that permission was not requested. The elderly neighbor did not testify.

. Defendant and the neighbor’s daughter testified to the contrary, saying that defendant did not strike the sheriff with the telephone, but instead, upon being told several times by defendant that she was not going to go down town with them, the officers grabbed her, handcuffed her, and carried defendant away, kicking and screaming, and forced her into the sheriff’s vehicle.

. The deputy’s testimony indicates, however, that when defendant threw her hands back “at that time, [he] had [hold of] Mrs. Siggers’ arm ..." There was no testimony from any of the four witnesses that defendant was told she was under arrest for striking the sheriff with the telephone or with her fists and feet. The first record evidence of the cause of the arrest apparently was the hooking entry made at the jail. CCrP Art. 228.
A peace officer making an arrest is required to inform the person to be arrested of his intention to arrest ... and of the cause of the arrest. CCrP Art. 218. When any person has been arrested or detained ... he shall be fully advised of the reason for his arrest or detention. Art. 218.1. This record shows that defendant was told only that she was going to go downtown whether she w»Kted to or not, to be with the officers while they talked with and about defendant’s 10-year-old daughter.