342 So.2d 196 (1977)
CITY OF NEW ORLEANS
v.
Judy LYONS.
No. 58277.
Supreme Court of Louisiana.
January 25, 1977.
*197 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Philip S. Brooks, City Atty., Robert H. Belknap, Asst. City Atty., for plaintiff-respondent.
Stanley B. Kieffer, New Orleans, for defendant-relator.
CALOGERO, Justice.
The incident giving rise to relator's conviction arose in the following manner. On the evening of Wednesday, 29 October 1975 in a French Quarter bar in New Orleans a New Orleans police officer approached Judy Lyons and requested she step outside of the bar so that he could question her. Apparently he wanted to ask her whether she had seen another woman who was under investigation and he wanted to quiz defendant relative to a complaint he had received that she, Lyons, was soliciting for prostitution. When the officer told her of a complaint against her of this nature, she replied with several epithets including "S___" and "F___you." The officer thereupon told her she was under arrest for using obscenity toward the police. Upon being so informed, defendant threw a drink on the officer and a struggle ensued in which she struck one or two minor blows.[1]
Defendant Lyons was charged with loitering with intent to commit prostitution, disturbing the peace by using obscenity toward the police, resisting arrest and battery, all four charges under New Orleans City ordinance. During the trial in Municipal Court for the City of New Orleans, the assistant city attorney nol prossed the loitering charge. However, defendant was found guilty of the other three charges and sentenced. On appeal to the Criminal District Court for the Parish of Orleans, following an earlier remand from that court *198 and a second proceeding in the Municipal Court, defendant's conviction for resisting arrest, arising as it did out of the identical battery incident, was overturned, the district court judge concluding that the double jeopardy proscription precluded conviction for both the battery and resisting arrest. Her remaining two convictions, for obscenity toward the police and battery, however, were affirmed, as were the respective sentences for those two offenses, namely, seventy-five dollars or twenty days in jail for obscenity toward the police, and thirty days for the battery.
Defendant thereupon applied for writs to this Court, which we granted. 337 So.2d 532 (La.1976).
Her assignments of error are three. One of them, having to do with whether the City may over defense objection amend its affidavit charging obscenity toward the police, so as to charge defendant under a different numerical section of the municipal code, we find it unnecessary to reach.
In her two other assignments, relator attacks as unconstitutional Section 42-24(5) of the Code of the City of New Orleans, which forbids obscenity toward the police, and she protests that her battery conviction should be overturned because she was resisting an unlawful arrest for violating the allegedly unconstitutional statute.
The constitutional attack is that on its face Section 42-24(5) is unconstitutionally overbroad. That ordinance provides that:
"Disturbing the peace is the intentional performance of any of the following acts:

* * * * * *
(5) Using obscene, abusive or insulting language directed to or in the presence of any police officer who is performing his duty in making an arrest, detaining, or questioning any person;"

* * * * * *
In Lewis v. City of New Orleans, 415 U.S. 130, 94 S.Ct. 970, 39 L.Ed.2d 214 (1974) the United States Supreme Court held invalid, because violative of the first and fourteenth amendments of the United States Constitution, a very similar ordinance which declared it unlawful and a breach of the peace for any person "wantonly to curse or revile or to use obscene or opprobrious language toward or with reference to any member of the city police while in the actual performance of this duty." Relying upon Gooding v. Wilson, 405 U.S. 518, 92 S.Ct. 1103, 31 L.Ed.2d 408 (1972), the United States Supreme Court found that the statute under consideration, by its terms, was not limited to words which "by their very utterance inflict injury or tend to incite an immediate breach of the peace." 415 U.S. at 132, 94 S.Ct. at 972. Since the proscribed conduct was not limited to fighting words, it was found overly broad and constitutionally impermissible.
The statute now under consideration, Section 42-24(5) refers to "obscene, abusive [and] insulting" language which, similarly, is broad enough to cover words which do not "by their very utterance inflict injury or tend to incite an immediate breach of the peace." The words uttered by defendant, when analyzed in context, were protected speech. There was no evidence to show, nor does the context herein suggest, that defendant's remarks tended to incite the police officer to an immediate breach of the peace. In fact, when such words are addressed to an officer, one would normally contemplate the need for a stronger showing that the words tend to incite the addressee to an immediate breach of the peace.[2] Thus there was lacking in this case the clear and present danger necessary in order to justify the state's interference with defendant's right to speak freely. Schenck v. United States, 249 U.S. 47, 39 S.Ct. 247, 63 L.Ed. 470 (1919).
In the case at hand the only action of the defendant which prompted her arrest was *199 her use of derogatory language toward the policeman when he attempted to question her. She was not prosecuted for public obscenity and there is no indication that her language had any tendency to cause a fight or public disturbance.
We are bound by the first amendment of the United States Constitution which prohibits "abridging the freedom of speech," and by the specific jurisprudential precedent of Lewis v. City of New Orleans, supra. Thus we are required to declare unconstitutional because overly broad and facially invalid this ordinance, Section 42-24(5) of the Code of the City of New Orleans, which makes criminal simply using language, albeit obscene, abusive or insulting, to or in the presence of a police officer performing his duty. Independently, we reach the same result by interpreting Article I, section 7 of the Louisiana Constitution of 1974 which proclaims that "[n]o law shall curtail or restrain the freedom of speech. . . ."
Having concluded that defendant was arrested for the unquestioned violation of an ordinance we now for the first time find unconstitutional, we turn now to whether we must let stand her conviction and sentence for a battery which the trial court found she committed. Our decision must turn upon whether or not a citizen may reasonably resist arrest for the violation of a criminal statute unconstitutional on its face but not yet then declared so. We find from the record that defendant did indeed commit a battery upon the police officer, but that same was done in a reasonable effort to resist arrest for violation of Section 42-24(5).
Louisiana has long held to the rule of law that a citizen has the right to resist an unlawful arrest. This Court declared in City of Monroe v. Ducas, 203 La. 971, 14 So.2d 781 (1943) that:
"The right of personal liberty is one of the fundamental rights guaranteed to every citizen, and any unlawful interference with it may be resisted. Every person has a right to resist an unlawful arrest; and, in preventing such illegal restraint of his liberty, he may use such force as may be necessary."
Involved in Monroe v. Ducas, supra, however, was not an appropriate arrest for violating a suspect criminal statute, but a blatant arrest for conduct not criminal.[3]
Efforts in this country to change that rule of law and deny the right to resist arrest which the person being arrested knows is being made by a peace officer, although the arrest is unlawful, have succeeded in a few states, but not in Louisiana.[4] Instead, the right to resist an unlawful arrest is codified in the Louisiana Criminal Code and the Louisiana Code of Criminal Procedure. Article 108 of the Criminal Code, R.S. 14:108, makes a crime the resistance to an individual "acting in his official capacity and authorized by law to make a lawful arrest," and Article 220 of the Code of Criminal Procedure requires that a "person . . . submit peaceably to a lawful arrest." [emphasis added]
This right to resist an unlawful arrest has not been accorded federal constitutional standing, the United States Supreme Court not yet having ever squarely decided whether there is a fourth amendment right to reasonably resist an unlawful arrest. As explained by Allan L. Durant in 31 La.L.Rev. 120, 125 (1970),
"The United States Supreme Court has said in dictum that, `one has an undoubted *200 right to resist and unlawful arrest," [in United States v. DiRe, 332 U.S. 581, 594, 68 S.Ct. 222, 92 L.Ed. 210 (1948)] but unfortunately the court failed to reveal whether this statement rested on constitutional or common law authority. In Wainwright v. City of New Orleans [392 U.S. 598, 88 S.Ct. 2243, 20 L.Ed.2d 1322 (1967)], Mr. Chief Justice Warren fathered the phrase, `a Fourth Amendment right to resist,' although he admitted that the constitutional issue of the right to resist an unlawful arrest was unnecessary in deciding that case. The issue of the existence of a Fourth Amendment right to reasonably resist an unlawful arrest has never been squarely raised or decided."
The matter at issue here, however, is not resolved by resort to the "lawful arrest" language of Article 108 of the Criminal Code and Article 220 of the Code of Criminal Procedure, for it is entirely another matter to categorize as "unlawful" an arrest in the proper enforcement of a clearly applicable statute or ordinance by a police officer commanded to do so by a duly ordained legislative body, and prior to pronouncement by a constitutionally authorized court that the legislative enactment is unenforceable because unconstitutional.
In this latter instance we do not believe that such an arrest is "unlawful" under these two articles. It may have been illegal, of course, in the sense that through hindsight it was prompted by conduct violating an ordinance later determined invalid. It was not unlawful, however, when we focus upon the officer's conduct in light of the prevailing ordinance which had not, at the time of the occurrence, been invalidated.
In this latter instance the right to personal liberty competes not with a police officer's abusive and self-proclaimed power, but with society's interest in orderly governmental process. Exposing officer and, perhaps, arrestee to retaliatory force may be a price we must pay to protect the personal liberty of a citizen whose conduct violates no law. It is not a price which we should impose upon officer and arrestee where that personal liberty is jeopardized by duly enacted statute, the constitutional test concerning which properly reposes in the courts.
We conclude that relator was not legally entitled to resist arrest nor to commit a battery coincident therewith, notwithstanding the fact that we have now determined that the ordinance which she was being arrested for violating is constitutionally null and void.
For the foregoing reasons Section 42-24(5) of the Code of the City of New Orleans is declared unconstitutional and relator's conviction and sentence for violation of this ordinance are reversed and set aside. However, relator's conviction and sentence for committing a battery upon the New Orleans police officer is affirmed.
SANDERS, C.J., concurs in the affirmance of the battery conviction, but dissents from the reversal and assigns written reasons.
SUMMERS, J., dissents in part and concurs in part with reasons.
DIXON, J., concurs in part and dissents in part, with reasons.
MARCUS, J., dissents in part and concurs in part and assigns reasons.
DENNIS, J., concurs in part and dissents in part for the reasons assigned by DIXON, J.
DIXON, Justice (concurring/dissenting).
I agree that the obscenity ordinance is unconstitutional but respectfully dissent from that part of the opinion which affirms the conviction for battery. The majority denies the right to resist an unlawful arrest, as long as it is made under color of an unconstitutional statute or ordinance. The effect is to permit legislative bodies and police to ignore constitutional provisions *201 and decisions. I would reverse both convictions.
MARCUS, Justice (dissenting in part and concurring in part).
It is well recognized that the right of free speech is not absolute at all times and under all circumstances. There are certain well-defined and narrowly limited classes of speech, the prevention and punishment of which has never been thought to raise any constitutional problem. According to Chaplinsky v. New Hampshire, 315 U.S. 568, 62 S.Ct. 766, 86 L.Ed. 1031 (1942), these "include the lewd and obscene, the profane, the libelous, and the insulting or `fighting' wordsthose which by their very utterance inflict injury or tend to incite an immediate breach of the peace." The Chaplinsky court further stated that "[t]he test is what men of common intelligence would understand would be words likely to cause an average addressee to fight." Such utterances are not protected by the constitution. Statutes must be carefully drawn or be authoritatively construed to punish only unprotected speech and must not be susceptible of application to protected expressions. Gooding v. Wilson, 405 U.S. 518, 92 S.Ct. 1103, 31 L.Ed.2d 408 (1972). Accordingly, I consider that the ordinance in question could be authoritatively construed by this court to limit its application to "fighting" and "obscene" words as defined by the United States Supreme Court in Chaplinsky and Roth v. United States, 354 U.S. 476, 77 S.Ct. 1304, 1 L.Ed.2d 1498 (1957). If we were to do so, the ordinance under consideration would be constitutional. Moreover, I am unable to say that the limited scope of the ordinance as thus construed would contravene the constitutional right of free expression. It should be observed that in Lewis v. City of New Orleans, 415 U.S. 130, 94 S.Ct. 970, 39 L.Ed.2d 214 (1974), the United States Supreme Court noted that this court "did not refine or narrow" the words of the ordinance then in question on remand but rather "took them [words] as they stood." It is obvious from this opinion that had we done so, the constitutionality of the ordinance would have been upheld.
Considering the facts and circumstances of the instant case under the authoritative limited construction hereinabove suggested, I find that the conviction should be upheld. In my view, the words of defendant addressed to the arresting officer under the circumstances here presented were such that "by their very utterance inflict injury or tend to incite an immediate breach of the peace."
With regard to defendant's conviction for battery, I concur fully in the reasons and judgment affirming the conviction and sentence.
For the foregoing reasons, I respectfully dissent in part and concur in part.
SANDERS, Chief Justice (concurring in part and dissenting in part).
I concur in the affirmance of defendant's conviction for battery.
I dissent from the reversal of the conviction for disturbing the peace by the use of abusive language to the police officer for the reasons assigned by Mr. Justice MARCUS.
SUMMERS, Justice (concurring in part and dissenting in part).
I concur in the affirmance of defendant's conviction for battery.
I dissent from the reversal of the conviction for disturbing the peace by the use of abusive language to the police officer for the reasons assigned by Mr. Justice MARCUS.
NOTES
[1] Defendant's version of what happened was, of course, different. The trial judge apparently accepted the foregoing version offered by the police officer and we likewise do so for our present consideration.
[2] Justice Brennan of the United States Supreme Court made a similar observation in Lewis v. City of New Orleans when he observed that a police officer is trained to exercise a higher degree of restraint than the average citizen. 415 U.S. at note 2, pp. 132-133, 94 S.Ct. 1103.
[3] There, relators, members of a religious organization, were engaged in transporting a black family to church when their car was blocked by a plainclothes policeman who approached relators, demanding to know what they were doing. When Ducas refused to answer and attempted to drive away, the officer interfered and was injured. Relators were arrested for resisting a police officer in the exercise of his duties. As Court noted in reversing their convictions, "at the time of their arrest neither of the relators was engaged in committing or attempting to commit any offense." 14 So.2d at 784.
[4] See 31 La.L.Rev. 120 (1970) wherein it is recounted that Sec. 302(2)(a)(i) of the Model Penal Code adopted by the American Law Institute in 1958 had in 1970 been adopted in New Hampshire, Delaware, and Rhode Island.