Nathaniel LUSK

v.

Edward ROBERTS, et al.

Civ. A. No. 83–0402–A.

United States District Court, M.D. Louisiana.

June 4, 1985.

William W. Miles, New Orleans, La., for plaintiff.

William R. Aaron, Asst. Parish Atty., Baton Rouge, La., for defendants.

Peter T. Dazzio, Baton Rouge, La., third party defendant, Fidelity & Cas. Co. of New York.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

JOHN V. PARKER, Chief Judge.

Plaintiff, Nathaniel Lusk, brings this action against Officer Edward Roberts of the Baton Rouge Police Department, the City of Baton Rouge, the Chief of Police, the Baton Rouge City Police Department and the unnamed liability insurer for the City, alleging violations of 42 U.S.C. § 1983 and § 1985 by reason of an alleged illegal assault, arrest and detention. Jurisdiction over such actions is vested in this court by 28 U.S.C. § 1343(a)(3). Plaintiff also asserts pendent claims for damages under Louisiana law arising out of the same factual situation.

Defendants filed a third party complaint against Fidelity and Casualty Company of New York, the liability insurer for the City of Baton Rouge, who denied coverage and refused to defend. That claim was severed prior to trial. Following the presentation of plaintiff's case, the court granted a directed verdict on all claims in favor of the Baton Rouge City Police Department and the Chief of Police and the City of Baton Rouge as to the civil rights claims only. Following the presentation of defendants' case, the matter was taken under submission.

### FINDINGS OF FACT

1. Plaintiff, Nathaniel Lusk, is a 44 year old black man, who because of a degenerative condition in both hips, must use full-length crutches to walk. On December 17, 1982 at 5:00 p.m., he and an acquaintance, Thomas Hayes, walked to a liquor store and laundromat, a common gathering place in the evenings. At the time that plaintiff arrived, there were approximately fifteen men gathered in front of the laundromat.

2. Plaintiff wished to use the pay phone located on the outside wall of the laundromat, but was waiting until it was unoccupied. While waiting, he drank a beer and visited with the other men.

3. At approximately 6:00 p.m., Officer Roberts was dispatched to the liquor store and laundromat pursuant to a report that a group of men were drinking and causing a disturbance. The complaint had been called in by Mrs. Flouselle Washington who lives behind the laundry. Roberts stopped

his patrol car in front of the group and told them to leave. He did not notice plaintiff during this initial stop.

4. After Roberts left, plaintiff tried to call someone on the pay phone to pick him up, but the line was busy. Plaintiff then began walking towards two men in a truck parked in front of the liquor store, intending, he says, to ask for a ride home.

5. Meanwhile, Roberts doubled back and returned to find the plaintiff and approximately six other men in the general area where the crowd had been. He again told the crowd to disperse and all began to leave except plaintiff.

6. Officer Roberts informed plaintiff that he would also have to leave and that a complaint had been filed. Plaintiff became belligerent, cursed Roberts and informed him that he did not have to leave; Roberts called for a back-up unit.

7. Plaintiff then began to move backwards toward the truck and refused to turn around and face the truck as Roberts ordered; Roberts advised the plaintiff that he was under arrest. Plaintiff reached under his jacket with his right hand and Roberts, thinking that plaintiff was reaching for a weapon, grabbed plaintiff's hand. The two tussled and fell to the ground. Roberts secured the plaintiff with handcuffs, stood him up, performed a quick pat-down search that produced no weapon and assisted the plaintiff to the police car.

Plaintiff testified that Roberts struck him in the back, kicked the crutch from his left side and twisted him around before they both fell to the ground. Plaintiff contends that he was not aware of Roberts' presence until he was hit in the back. Plaintiff's testimony is contradicted by that of his only factual witness, Thomas Hayes, who testified that plaintiff was telling Roberts that he had a right to use the phone when Roberts kicked plaintiff's crutch causing him to fall. Plaintiff did not attempt to produce the two men sitting in the truck to support his story, although he knew their names and had spoken with them about the case. The court finds that the testimony of Officer Roberts is the most credible as to the nature of the encounter.

8. Roberts then drove the plaintiff to the local police substation where he was informed of his rights and the handcuffs were removed. Plaintiff was again placed in the back seat of the police car and was transported to the jail.

9. At the booking desk, plaintiff began to complain for the first time about pain in his knee. A nurse was called to examine him and found a loaded .32 cal. pistol concealed in his sock. Plaintiff explained that he was carrying the gun to kill stray dogs in a junk yard, where he and a friend were working earlier in the day.

10. The nurse found that plaintiff's knee was slightly swollen, but noted no discoloration or abrasion. She kept the knee bandaged and provided plaintiff with ice packs and some medication for pain until he was bonded out of jail at 1:20 a.m.

11. Plaintiff was taken to the emergency room at the Baton Rouge General Hospital and then transferred to Earl K. Long Hospital. He was hospitalized for four days and had to wear an upper and lower cast, with his knee exposed, for six to eight weeks.

12. Plaintiff was diagnosed as having a "lateral tibial plateau fracture and injury to the left peroneal nerve resulting in a drop-foot deformity." These injuries did not aggravate plaintiff's pre-existing hip condition and the medical testimony revealed that the fracture has healed and should no longer be painful. While the peroneal nerve injury is not painful, it causes muscular weakness or a lack of muscular function and some discomfort. Plaintiff will, in all likelihood, need surgery on his knee in the future. The injuries do not affect the plaintiff's employment prospects, however, due to his pre-existing hip condition.

13. Plaintiff was initially charged with resisting arrest, carrying a concealed weapon and resisting an officer. A trial was held in Baton Rouge City Court on March 10, 1983 on the charges of resisting an

officer, Baton Rouge City Code, 13:70,[1] and carrying a concealed weapon, Baton Rouge City Code, 13:80.[2] A judgment of acquittal was entered on all charges.

## CONCLUSIONS OF LAW

1. Congress has provided 42 U.S.C. § 1983 and § 1985 as vehicles to seek monetary damages for a violation of one's rights to be free from illegal arrests and detentions by a party acting under color of state law. *Monroe v. Pape*, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961).

2. In arresting the plaintiff, Officer Roberts was clearly acting under "color of law" as defined by the jurisprudence. *Monroe v. Pape, supra.*

3. Officer Roberts alleges two grounds for the plaintiff's arrest; the first is a violation of the charged offense, Baton Rouge City Code 13:70(b)(4), in that plaintiff was part of a crowd and refused to leave when ordered to do so by a law enforcement officer. Although not mentioned in defendant's brief, Roberts testified that he arrested the plaintiff for creating a disturbance, which would have been a violation of Baton Rouge City Code 13:50, disturbing the peace.

4. Officer Roberts has also asserted the affirmative defense of qualified immunity. Public officials whose positions entail the exercise of discretion enjoy the special protection of a qualified immunity from personal liability in § 1983 damage actions. *Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). Once the defendant has asserted the qualified immunity and has established that any allegedly tortious conduct was undertaken pursuant to the exercise of his discretionary authority, the burden then shifts to the plaintiff to rebut this good faith defense. *Saldana v. Garza*, 684 F.2d 1159, 1163 (5th Cir.1982), *cert. denied* 460 U.S. 1012, 103 S.Ct. 1253, 75 L.Ed.2d 481 (1983); *Garris v.*

1. Baton Rouge City Code 13:70, at the time of plaintiff's arrest read as follows:

 **Sec. 70. Resisting an officer.**
 (a) *"Resisting an officer" defined.* It shall be unlawful to resist an officer. "Resisting an officer" is the intentional opposition or resistance to, or obstruction of, an individual acting in his official capacity and authorized by law to make a lawful arrest or seizure of property, or to serve any lawful process of court order, when the offender knows or has reason to know that the person arresting, seizing property, or serving process is acting in his official capacity.
 (b) *Obstruction defined.* The phrase "obstruction of" as used herein shall, in addition to its common meaning, signification and connotation mean:
 (1) Flight by one sought to be arrested before the arresting officer can restrain him and after notice is given that he is under arrest.
 (2) Any violence toward or any resistance or opposition to the arresting officer after the arrested party knows of or should have known of the officer's official status and of his intention to effect the arrest.
 (3) Refusal by the arrested party to give his name and make his identity known to the arresting officer.
 (4) Congregates with others on a public street and refuses to move on when ordered by the officer. (Ord. No. 3948, § 1, 9–27–78)

2. Baton Rouge City Code 13:80, at the time of plaintiff's arrest read as follows:

 **Sec. 80. Illegal carrying of weapons.**
 It shall be unlawful for any person to illegally carry a weapon.
 Illegal carrying of weapons is:
 (1) The intentional concealment of any firearm, or other instrumentality customarily used or intended for probable use as a dangerous weapon, on one's person; or
 (2) The ownership, possession, custody or use of any firearm or other instrumentality customarily used as a dangerous weapon, at any time by an enemy alien; or
 (3) The ownership, possession, custody or use of any tools, or dynamite or nitroglycerine, or explosives, or other instrumentality customarily used by thieves or burglars at any time by any person with the intent to commit a crime; or
 (4) The manufacture, ownership, possession, custody or use of any switch blade knife, spring knife or other knife or similar instrument having a blade which may be automatically unfolded or extended from a handle by the manipulation of a button, switch, latch or similar contrivance.
 (5) The provisions of this section, except paragraph (4) of this section, shall not apply to sheriffs and their deputies, state and city police, constables and town marshals, or persons vested with police power when in the actual discharge of official duties. (Ord. No. 3948, § 1, 9–27–78)

*Rowland,* 678 F.2d 1264, 1271 (5th Cir.), *cert. denied,* 459 U.S. 864, 103 S.Ct. 143, 74 L.Ed.2d 121 (1982). Plaintiff must establish that the defendant's allegedly wrongful conduct violated clearly established law, with the focus on the objective reasonableness of the official's acts. *Harlow v. Fitzgerald, supra; Metlin v. Palastra,* 729 F.2d 353, 356 (5th Cir.1984). Although defendant argues the pre-*Harlow* subjective standard, the qualified immunity defense will be considered according to the *Harlow* standard.

5. Officer Roberts was clearly acting within his discretionary authority when he arrested the plaintiff. Therefore the burden of proof shifted to the plaintiff to show that the defendant violated clearly established law.

■■■■ 6. The court must first determine that the validity of the statute in question is not in such doubt that it cannot be relied upon. Then the proper inquiry is whether a reasonable officer under similar circumstances would have had probable cause to believe that plaintiff committed the offense in question. The Fourth Amendment rule on warrantless arrests is "clearly established law." If an arrest lacks probable cause for its support, it is, objectively speaking, in violation of clearly established law. *Trejo v. Perez,* 693 F.2d 482, 488 (5th Cir.1982). A peace officer who arrests someone with probable cause is not liable for false arrest simply because the innocence of the suspect is later

proved. *Pierson v. Ray,* 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967).

■■■ 7. Neither party has suggested that Baton Rouge City Code 13:70 is unconstitutional. It prohibits the "intentional opposition ... or obstruction of" an officer, "when the offender knows or has reason to know that the person arresting, seizing property or serving process is acting in his official capacity." The term "obstruction" is defined as "congregates with others on a public street and refuses to move on when ordered by the officer." Baton Rouge City Code 13:70(4). The local ordinance is a virtual "Chinese copy" of a state statute, L.S.A.R.S. 14:108,[3] which Louisiana jurisprudence has upheld as constitutional, but has restricted application to its specific statutory language. In *State v. Huguet,* 369 So.2d 1331 (La.1979), the court held that despite the broad language of the "obstruction" portion of the statute, refusal to move when ordered by police is not a crime "unless it obstructs police in their official duties of making a lawful arrest, seizure, or service of process." Id. at 1333. If the officer is not engaged in one of the three stated activities—attempting to seize property, serving process, or making a lawful arrest—then a person who opposes him cannot be guilty of a violation of § 108. *State v. Nix,* 406 So.2d 1355 (La.1981); *State v. Lindsay,* 388 So.2d 781 (La.1980); *State v. Huguet, supra; Adams v. Thompson,* 560 F.Supp. 894 (M.D.La.1983). The same interpretation should apply to the city

---

**3.** La.R.S. 14:108 reads as follows:

 **108. Resisting an officer.**

 A. Resisting an officer is the intentional opposition or resistance to or obstruction of an individual acting in his official capacity and authorized by law to make a lawful arrest or seizure of property or to serve any lawful process or court order when the offender knows or has reason to know that the person arresting, seizing property, or serving process is acting in his official capacity.

 B. (1) The phrase "obstruction of" as used herein shall, in addition to its common meaning, signification, and connotation mean the following:"

 (a) Flight by one sought to be arrested before the arresting officer can restrain him and after notice is given that he is under arrest.

 (b) Any violence toward or any resistance or opposition to the arresting officer after the arrested party is actually placed under arrest and before he is incarcerated in jail.

 (c) Refusal by the arrested party to give his name and make his identity known to the arresting officer.

 (d) Congregation with others on a public street and refusal to move on when ordered by the officer.

 (2) The word "officer" as used herein shall include deputy sheriffs and municipal police officers.

 C. Whoever commits the crime of resisting an officer shall be fined not more than five hundred dollars or be imprisoned for not more than six months, or both.

ordinance since the wording is essentially identical. *See State v. Jordan*, 369 So.2d 1347 (La.1979). The court in *State v. Huguet*, supra, also noted that another statute, L.S.A.R.S. 14:103.1, which did make it a crime to refuse to disperse or move on when ordered to do so by a police officer, was declared unconstitutional in *Cox v. State of Louisiana*, 379 U.S. 536, 85 S.Ct. 453, 13 L.Ed.2d 471 (1965). Thus a reasonable law officer could not have a good faith belief that the local ordinance authorized arrest for refusal to move on when the officer was not acting in his official capacity, as defined by the ordinance—seizing property, serving process or making a lawful arrest. The court has the impression that Roberts assumed that the ordinance broadly authorized him to arrest plaintiff because plaintiff refused to move on when ordered to do so. In view of *Cox v. Louisiana, supra,* a reasonable law officer could not entertain a good faith belief that an ordinance authorizing a police officer to order people to "move on" and authorizing arrest of those who refuse could be a constitutional exercise of police power.

8. At the time that Officer Roberts informed the plaintiff that he was under arrest, prior to any contact between the two, Roberts was not in the process of attempting to seize property, serving process or making a lawful arrest, and no prudent person could have reasonably concluded that plaintiff was violating § 70, the local ordinance. The evidence shows that there was no probable cause for plaintiff's arrest under § 70 and an arrest on this basis violated clearly established law.

9. As previously mentioned, defendant testified that he arrested the plaintiff for disturbing the peace. This contention is not argued by the defendant in brief and the court can only assume that defendant is relying on Baton Rouge City Code 13:50(b),[4] which was raised as a basis for the arrest in the Baton Rouge City Court proceedings, although plaintiff was not charged with that offense.

■ 10. The charging of an offense is not a prerequisite to its use in justification of a warrantless arrest on other grounds. When a crime under which the arrest is made and a crime for which probable cause exists are in some fashion related, then there is no question but that there is a valid arrest. *United States v. Atkinson*, 450 F.2d 835, 838 (5th Cir.1971), *cert. denied*, 406 U.S. 923, 92 S.Ct. 1790, 32 L.Ed.2d 123 (1972); *Trejo v. Perez*, 693 F.2d 482 (5th Cir.1982). There is no requirement that the arresting officer have the un-charged offense specifically in mind at the time of the arrest. The inquiry is whether the conduct that served as the basis for the charge for which there was no probable cause could, in the eyes of a similarly situated reasonable officer, also have served as a basis for a charge for which there was probable cause. *Trejo v. Perez*, id. at 486.

11. The crimes of resisting an officer and disturbing the peace are sufficiently related that an objective officer may have charged the latter. The conduct that gave rise to the arrest was plaintiff's refusal to leave; the conduct that might have permitted an arrest for disturbing the peace was plaintiff's loud and belligerent conduct in response to Roberts' order to leave.

12. There is no contention by either side that § 50(b) is unconstitutional. While portions of a similar state criminal statute, L.S.A.–R.S. 14:103 have been declared unconstitutional, *State v. Brown*, 282 So.2d 707 (La.1973); *State v. Adams*, 263 La. 286, 268 So.2d 228 (1972), neither § 103(a)(2) 5 as it currently reads, nor Ba-

---

4. Baton Rouge City Code 13:50(b) states:
 **Sec. 50. Disturbing the peace.**
 It shall be unlawful for any person to disturb the peace. "Disturbing the peace" is the doing of any of the following acts in such a manner as would foreseeably disturb or alarm the public, *or create any dangerous or violent conditions...*

 (b) Address toward another person language which is threatening, profane, obscene, or derisive, and which in the manner uttered has a tendency to incite an ordinary addressee to violent retaliatory action and a breach of the peace.

ton Rouge City Code 13:50(b) have been declared unconstitutional. There is no clearly established law that the offense is unconstitutional.

13. The next inquiry is whether a reasonable officer under similar circumstances would have had probable cause to believe that plaintiff had committed the offense of disturbing the peace. *Trejo v. Perez*, 693 F.2d 482 (5th Cir.1982). The evidence shows that plaintiff began cursing when Roberts told him that he would have to leave. That some disturbance occurred is substantiated by Mrs. Washington's testimony that she heard a loud noise and then saw plaintiff being placed in the police car, although it is not clear whether she heard plaintiff's response or the noise ensuing from the officer's action in taking plaintiff into custody. Even the testimony of Thomas Hayes substantiated that plaintiff made some response to Roberts' order.

 14. It is settled law, however, that cursing in the presence of a police officer is generally considered protected speech under the First Amendment to the United States Constitution and Article 1 § 7 of the Louisiana Constitution, which protect the right of freedom of speech, unless the words used are "fighting words," which are words that "by their very utterance inflict injury or tend to incite an immediate breach of the peace." *City of New Orleans v. Lyons*, 342 So.2d 196 (La.1977); *White v. Morris*, 345 So.2d 461 (La.1977); *State in Interest of W.B.*, 461 So.2d 366 (La.App. 2d Cir.1984). When such words are directed at a police officer, a stronger showing is necessary that the words tend to incite the addressee to an immediate breach of the peace, since a police officer is trained (or should be) to exercise a higher degree of restraint than the average citizen. *City of New Orleans v. Lyons*, supra; *White v. Morris*, supra.

15. No evidence was presented to show that plaintiff's words tended to incite an immediate breach of the peace and the evidence presented would not allow a reasonable officer to believe that plaintiff violated § 50(b).[5] The clear and present danger necessary in order to justify the state's interference with the plaintiff's right to speak freely has not been shown. *See City of New Orleans v. Lyons, supra.*

16. Defendant has not suggested any other basis for plaintiff's arrest and it is not the court's function to suggest one. Defendant has not raised the second part of the good faith immunity defense as established by *Harlow*—the existence of extraordinary circumstances showing that he neither knew nor should have known of the relevant legal standard. Plaintiff has proven that he was arrested without probable cause and thereby deprived of a right under the Constitution.

 17. Since there was no probable cause for his arrest, plaintiff was entitled to resist the unlawful arrest and to use reasonable force in doing so, under either federal, *United States v. Di Re*, 332 U.S. 581, 68 S.Ct. 222, 92 L.Ed.2d 210 (1948) or state law, *White v. Morris, supra; Adams v. Thompson*, supra, and he is entitled to the damages sustained as a result of the arrest. Much was made of the defendant's belief that plaintiff was searching for a gun after being placed under arrest. However, this relates to the issue of whether Officer Roberts used excessive force in making the arrest. Concluding that the arrest was illegal, the court does not reach the question of excessive force. The plaintiff had a right to resist and plaintiff's conduct in doing so was reasonable—bearing in mind that plaintiff did not actually attempt to use the pistol which was concealed in his sock.

**5.** The transcript of the trial in Baton Rouge City Court indicates that the prosecution tried to elicit testimony from Officer Roberts that plaintiff's language posed a threat of causing difficulty with other people in the vicinity. Officer Roberts responded that the only threat was that someone else may have become involved, but later testified that no one else was present and the crowd had dispersed. His testimony did not indicate that the words tended to incite an immediate breach of the peace.

18. Plaintiff is also entitled to recover for his pendent state law claim of assault and battery. The physical attack on a private citizen by a police officer, absent a valid arrest, constitutes a battery. *Norrell v. City of Monroe*, 375 So.2d 159 (La.App. 2d Cir.1979); *Malone v. Fields*, 335 So.2d 538 (La.App. 2d Cir.1976). The officer's use of physical force to overcome plaintiff's resistance renders the City of Baton Rouge liable for damages, as the officer's employer.

19. Plaintiff was unlawfully deprived of his freedom due to the unlawful arrest and detention and is entitled to an award of $10,000.00 for this experience. Plaintiff also suffered a fractured tibia and peroneal nerve injury resulting in a drop-foot deformity which can be minimized by the use of a brace or a corrective shoe device. Plaintiff will most likely require surgery on his knee in the future to achieve stability. For the physical and mental injuries which resulted from the assault and battery, plaintiff is entitled to an award of $15,-000.00.

20. Plaintiff is also entitled to an award for past medical expenses in the amount of $523.99, and the estimated cost of future surgery in the amount of $5,000.00 or a total of $5,523.99.

21. Plaintiff requests punitive damages under his § 1983 claim. Punitive damages may be assessed in a § 1983 action when the defendant's conduct is shown to be motivated by evil motive or intent or when it involves reckless or callous indifference to the federally protected rights of others. *Smith v. Wade*, 461 U.S. 30, 103 S.Ct. 1625, 75 L.Ed.2d 632 (1983). The evidence shows that Officer Roberts may have acted overzealously, but does not support an award for punitive damages. Plaintiff's request is DENIED.

22. Plaintiff has also prayed for attorney's fees and he is entitled to them under § 1988. *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir.1974). Counsel shall submit the information required by *Johnson v. Georgia Highway Express, supra*, in order that attorney's fees may be assessed.

Judgment will be entered accordingly.